**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Luis Rodolfo ZAVALA–SERRA,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Maria Novoa CRUZ,
Defendant–Appellant.**

**Nos. 87–1141, 87–1150.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1988.

Decided Aug. 11, 1988.

Reginald P. Minn, Minn & Ripley, Honolulu, Hawaii, for defendant-appellant Zavala–Serra.

Earle A. Partington, Honolulu, Hawaii, for defendant-appellant Novoa Cruz.

Michael K. Kawahara, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before WALLACE, REINHARDT and NOONAN, Circuit Judges.

WALLACE, Circuit Judge:

The district court found appellants Luis Rodolfo Zavala–Serra (Zavala) and Maria Novoa Cruz (Novoa) guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Zavala was also convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). In this

consolidated appeal, Novoa challenges her conviction, arguing that the district court erred in admitting co-conspirator statements against her and that there was insufficient nonhearsay evidence to sustain her conviction. Zavala challenges the constitutionality of the statute under which he was sentenced. We affirm.

I

Novoa was charged with conspiracy to distribute cocaine and with possession with intent to distribute cocaine in violation of federal narcotics laws. She was convicted of the conspiracy charge and acquitted of the possession charge. The evidence demonstrated that Novoa conspired with Zavala and others to import a large shipment of cocaine into Hawaii. Miller, a government informant, testified that Zavala made various statements during the course of the conspiracy identifying Novoa as the source of the cocaine. On one occasion, Zavala told Miller that he anticipated receiving "the shipment" from "his friend Maria." On another occasion, Zavala told Miller that he had gotten in touch with and "was talking to Maria." Miller also testified that he was present when Zavala placed several telephone calls to a person in California. During one call, Miller overheard Zavala ask for cocaine and discuss the shipment. Miller also testified that Zavala made another call to a person "he said was Maria" during which Zavala discussed a shipment of money to California. Telephone toll records introduced by the government corroborated Miller's testimony that Zavala placed numerous telephone calls to Novoa's residence during the period in question.

Another government witness, Arguedas–Prieto (Arguedas), who was charged along with Zavala and Novoa but not brought to trial, testified that Zavala asked him to bring some cocaine to Hawaii and told him that he, Arguedas, should procure the cocaine they needed from "Maria" in California.

Novoa objected to the admission of these statements on two grounds. First, she contended that there was insufficient evidence, apart from the hearsay statements themselves, to establish her involvement in the conspiracy between Zavala, Arguedas, and others to import cocaine into Hawaii. Novoa also argued that the government failed to establish that Zavala's statements to Miller were made "in furtherance of the conspiracy" and were thus inadmissible as statements of a coconspirator under Federal Rules of Evidence 801(d)(2)(E). Finally, Novoa asserted that if the hearsay statements were improperly admitted, there was insufficient evidence to sustain her conviction. She renews these arguments on appeal.

A.

The order of taking evidence may vary, but prior to the final admission of out-of-court statements of co-conspirators against a criminal defendant to the fact finder, the government must establish by a preponderance of the evidence that a conspiracy existed and that the defendant was connected to it. *Bourjaily v. United States*, —— U.S. ——, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987) (*Bourjaily*). The existence of a conspiracy and the defendant's involvement in it are preliminary questions of fact that must be resolved by the trial court. *Id.* 107 S.Ct. at 2778.

In making these preliminary factual determinations, the judge may examine the hearsay statements sought to be admitted along with other relevant evidence and give the evidence "such weight as his experience and judgment counsel." *Id.* at 2782. Prior to *Bourjaily*, we reviewed de novo the district court's preliminary factual determination that a conspiracy existed and the defendant was involved in it. *United States v. Smith*, 790 F.2d 789, 794 (9th Cir.1986). However, the Supreme Court opinion in *Bourjaily* indicates that we should determine whether "the District Court's factfinding of this point was clearly erroneous." 107 S.Ct. at 2782. But under either standard of review of this determination, we are convinced that the government satisfied its burden of demonstrating the conspiracy and Novoa's involvement in it by a preponderance of the evidence.

Novoa contends that there was insufficient evidence, apart from Zavala's out-of-court statements to Miller and Ar-

guedas, to support the district court's preliminary factual determination that the government had satisfied its burden of establishing her membership in the conspiracy. This argument is bolstered by our decision in *United States v. Gordon*, 844 F.2d 1397 (9th Cir.1988) (*Gordon*). Although *Bourjaily* clearly holds that the co-conspirator hearsay statements can be used to prove the preliminary facts of the conspiracy and a defendant's involvement in it, the Court left open whether the government must also produce evidence in addition to the proposed statements. *Bourjaily*, 107 S.Ct. at 2781–82. In *Gordon*, we held the government must do so. 844 F.2d at 1402.

In this case, the government introduced evidence, in addition to the challenged hearsay statements, directly implicating Novoa in the conspiracy. Arguedas, an admitted member of the conspiracy, testified that he spoke to Novoa after Zavala told him to obtain cocaine from "Maria." According to Arguedas, Novoa told him that Zavala was sending her money for the cocaine purchase. On a different occasion, Novoa told him that "there was some delay in getting the stuff. She couldn't get it together. There were some delays trying to get the coke." Telephone toll records introduced by the government corroborated Arguedas's testimony that he placed calls to Novoa's residence during the period in question.

Novoa's statements to Arguedas constitute admissions of a party. These admissions, viewed in conjunction with the hearsay statements and the toll records, were sufficient to establish her membership in the conspiracy by a preponderance of the evidence.

Novoa nevertheless contends that the district court erred in determining that she participated in the plan to transport cocaine to Hawaii. She bases this argument on the proposition that Arguedas's testimony regarding his conversations with her was inherently incredible. She supports this argument by pointing out that Arguedas testified for the government only after obtaining a favorable plea bargain and that Arguedas's testimony that his calls to Novoa were made collect was contradicted by telephone toll records.

These contentions merely indicate Novoa's belief that Arguedas was not a credible witness. In essence, she asks us to determine anew the probative value to be assigned Arguedas's testimony. This we will not do. Arguedas's testimony, if believed, was strong evidence that Novoa played a crucial role in the conspiracy. The question whether Arguedas's testimony was deserving of belief was for the fact finder, not for an appellate court reviewing his testimony on the basis of a cold record. *See United States v. Gudino*, 432 F.2d 433, 434 (9th Cir.1970) (per curiam) (*Gudino*). Moreover, in light of the evidence corroborating Arguedas's testimony that he placed calls to Novoa during the time period in question and the hearsay testimony indicating that Zavala regarded Novoa as his "supplier," we cannot conclude, on the basis of the record before us, that Arguedas's testimony was inherently incredible. Consequently, we hold that the trial court did not err in determining that the government succeeded in proving Novoa's involvement in the conspiracy by a preponderance of the evidence.

### B.

Novoa also contends that the government did not demonstrate, as it must, that the statements sought to be admitted were made "in the course of and in furtherance of the conspiracy." Fed.R. Evid. 801(d)(2)(E). We review the district court's determination that a statement was made in the course of and in furtherance of the conspiracy for clear error. *United States v. Smith*, 790 F.2d at 794. Under the clearly erroneous standard, we will not reject the district court's factual findings unless we are "left with the definite and firm conviction that a mistake has been made." *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc) (*McConney*), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), *quoting Pullman–Standard v. Swint*, 456 U.S. 273, 284–85 n. 14, 102 S.Ct. 1781, 1788 n. 14, 72 L.Ed.2d 66 (1982).

Novoa argues that Zavala's out-of-court statements to Miller were not made "in furtherance of" the conspiracy because Miller was acting as a government informant at the time these statements were made. She argues that because Miller was not a member of the conspiracy, Zavala's statements "in no way advanced the conspiracy," but instead merely "facilitate[d] [Miller's] role as an informer." In essence, Novoa contends that a statement must *in fact* "further the conspiracy" to be admissible as a statement made "in furtherance of" a conspiracy.

It is well established that statements made by a co-conspirator need not be made to a member of the conspiracy to be admissible under rule 801(d)(2)(E). *See, e.g., United States v. Taylor*, 802 F.2d 1108, 1117 (9th Cir.1986) (statements to Federal Bureau of Investigation undercover agent), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987); *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir.1985) (*Echeverry*) (statements to Drug Enforcement Agency agent). Therefore, when inquiring whether a statement was made "in furtherance of" a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement. As we explained in *United States v. Foster*, 711 F.2d 871 (9th Cir. 1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984):

> When a declarant "seek[s] to induce [the listener] to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objective," the declaration may be admissible [as a co-conspirator statement]. Statements concerning activities of the conspiracy, including future plans, also may become admissible when made with such intent.

*Id.* at 880, *quoting United States v. Moore*, 522 F.2d 1068, 1077 (9th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976).

The government argues that although Miller was not an actual member of the conspiracy, Zavala regarded Miller as an assistant and used him as a "front man" for the conspiracy. For example, on one occasion, Zavala had Miller mail a $10,000 down payment for the cocaine from a Honolulu post office. On another occasion, after deciding that he would need to go to Los Angeles to pick up the cocaine, Zavala asked Miller to make his airline reservations and pick up his tickets for the trip. The government contends that this evidence tends to establish that Zavala's conversations with Miller regarding Novoa's involvement in the conspiracy were intended to apprise Miller of ongoing developments in the conspiracy and thereby facilitate his cooperation and assistance.

The district court's finding that Zavala's "statements were made in furtherance of [the] conspiracy will not be disturbed unless the trial judge could not reasonably have to come to that conclusion." *Echeverry*, 759 F.2d at 1457. In light of the evidence indicating that Zavala turned to Miller for assistance during various stages of the conspiracy, we are not left with the "definite and firm conviction" that the district court's finding that Zavala's statements to Miller were intended to further the aims of the conspiracy was unreasonable. *See McConney*, 728 F.2d at 1201.

### C.

Because we find that the district court did not err in admitting Zavala's statements under Fed.R.Evid. 801(d)(2)(E), we need not reach the question whether there was sufficient evidence apart from the challenged statements to support Novoa's conviction. Accordingly, her conviction is affirmed.

### II

Zavala, unlike Novoa, does not challenge his conviction. He argues that the statute under which he was sentenced, 21 U.S.C. § 841(b)(1)(B), is unconstitutional in several of its potential applications. Section 841(b)(1)(B) provides for a mandatory minimum five-year sentence without possibility of parole for any person convicted of an offense involving "500 grams or more of a mixture or substance containing a detectable amount of ... cocaine." At oral argument, Zavala's attorney conceded that his

client, who was sentenced to ten years in prison, was not affected by the minimum mandatory five-year sentence provision of section 841(b)(1)(B), and thus lacks standing to challenge the constitutionality of that aspect of section 841(b)(1)(B). We therefore consider only Zavala's challenge to the no-parole provision of the statute.

Zavala argues that section 841(b)(1)(B) violates the equal protection and due process components of the fifth amendment because it denies parole to an offender without regard to his role in the illegal drug transaction or the purity of the drug involved. Zavala contends that because a minor figure in a drug transaction involving a small amount of pure cocaine mixed in a 500 gram non-cocaine substance is subject to the no-parole provision of section 841(b)(1)(B), while a major figure in a transaction involving 499 grams of pure cocaine would not be subject to the no-parole provision, section 841(b)(1)(B) arbitrarily and irrationally subjects less culpable defendants to harsh penalties not imposed on more culpable defendants. Zavala claims that the failure of Congress to distinguish minor figures who possess small amounts of pure cocaine from major actors who possess substantial quantities of pure cocaine results in disparate treatment of less culpable offenders in violation of the equal protection component of the due process clause.

In the present case, however, Zavala planned, supervised, and executed a scheme to import 2,000 grams of 86% pure cocaine into Hawaii. He was thus neither a "minor figure" in the conspiracy to possess and distribute cocaine nor a person involved in a transaction involving less than 500 grams of pure cocaine. A defendant cannot claim a statute is unconstitutional in some of its reaches if the statute is constitutional as applied to him. *United States v. Raines,* 362 U.S. 17, 21–22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960); *United States v. Smith,* 818 F.2d 687, 690 (9th Cir.1987) (*Smith*); *Brache v. County of Westchester,* 658 F.2d 47, 51 (2d Cir.1981) (*Brache*) (defendant to whom statute may validly be applied lacks standing to contend that the statute would be unconstitutional if applied to other persons or other situa-

tions), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982). Therefore, because Zavala is not a member of the class allegedly disfavored by the statute, we do not address his claim that the no-parole provision of section 841(b)(1)(B) would violate the equal protection component of the fifth amendment if applied to a minor participant in a transaction involving a substance containing only a small amount of pure cocaine.

■ For the same reasons, we do not address Zavala's due process claim. This claim, like Zavala's equal protection claim, is based on the notion that it would be "irrational" to withhold the privilege of parole from a criminal found guilty of possessing a substance containing only a tiny amount of cocaine. According to Zavala, by presuming that persons possessing large amounts of a cocaine-containing "substance" are as culpable as persons possessing slightly smaller amounts of pure cocaine, the statute irrationally fails to achieve its primary purpose of deterring and punishing major cocaine traffickers. Zavala, however, does not contend that it is irrational to withhold the privilege of parole from major drug traffickers like himself. He concedes that a scheme under which persons found guilty of possessing large amounts of relatively pure cocaine are denied parole is rationally related to the legitimate governmental purpose of deterring drug trafficking. His only claim is that it would be irrational to deny parole to defendants less culpable than himself. Zavala lacks standing to make this argument. *See, e.g., Smith,* 818 F.2d at 690 (defendants to whom penalty provision constitutionally applied lack standing to argue that statute would lead to a disproportionate result in other cases); *Hatheway v. Secretary of the Army,* 641 F.2d 1376, 1382–83 (9th Cir.) (*Hatheway*) (serviceman convicted of homosexual sodomy lacks standing to argue that statute criminalizing sodomy is unconstitutional as applied to private, heterosexual acts), *cert. denied,* 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981). He must confine his constitutional attack to the circumstances of his own case. *See United States v. Medina,* 775 F.2d 1398,

1402 (11th Cir.1985) (defendant may only challenge the constitutionality of a statute as it has been applied in his case); *Smith,* 818 F.2d at 690 (accord). Because Zavala does not dispute that the statute can rationally be applied to major cocaine traffickers like himself, we do not reach the question whether a less culpable figure in another case could successfully mount a due process clause attack on its provisions. *Smith,* 818 F.2d at 690; *Hatheway,* 641 F.2d at 1382–83.

▪ In the same vein, Zavala argues that section 841(b)(1)(B) violates the eighth amendment's prohibition against cruel and unusual punishment because it subjects peripheral figures in drug transactions involving a substance containing only one gram of pure cocaine to punishment that is "manifestly disproportionate" to the gravity of the offense. Once again, Zavala lacks standing to argue that a criminal sentence imposed on a different defendant in a different situation would constitute cruel and unusual punishment. *Smith,* 818 F.2d at 690; *see also Brache,* 658 F.2d at 51. Therefore, the only argument that Zavala has standing to make before this court is that imposition of a ten-year sentence without possibility of parole is so disproportionate to the crimes of conspiracy to possess and possession with intent to distribute 2,000 grams of cocaine that it amounts to cruel and unusual punishment.

▪ It is not completely clear from Zavala's briefs whether he has preserved an as-applied attack on his sentence during this appeal. It may be that his eighth amendment challenge rests on the contention that a "first offender" on the "periphery" of an offense involving a tiny amount of cocaine should not be subject to the penalties outlined in section 841(b)(1)(B). We interpret Zavala's briefs, however, as preserving the argument that his sentence was disproportionate to his crime, but we conclude that his contention lacks merit. There is no constitutional or inherent right of a convicted person to be released on parole before the expiration of a valid sentence. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1978). While the government may elect to establish a parole system, the Constitution does not compel it to do so. *Id.; see also Halprin v. United States,* 295 F.2d 458, 460–61 (9th Cir.1961) (at worst, a statute withholding the privilege of parole merely forbids the granting of a special benefit that Congress does not have to grant in the first place). Therefore, Congress's refusal to authorize parole for some offenses is not per se unconstitutional. *Gudino,* 432 F.2d at 434. Moreover, the proportionality requirement of the eighth amendment does not require that a defendant's sentence be harmonized with sentences imposed by other courts on other defendants. *United States v. Meyer,* 802 F.2d 348, 353 (9th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987). Generally, as long as the sentence imposed upon the defendant does not exceed statutory limits, we will not overturn it on eighth amendment grounds. *See id.; United States v. Kinsey,* 843 F.2d 383, 392–93 (9th Cir.1988) (*Kinsey*); *United States v. Washington,* 578 F.2d 256, 258 (9th Cir.1978).

The sentence imposed on Zavala in this case did not exceed the statutory maximum of 40 years set forth in section 841(b)(1)(B). Nor can we say that it is grossly disproportionate when viewed in the light of sentences imposed for other drug possession crimes. *See, e.g., Kinsey,* 843 F.2d at 392–93 (20-year sentence without parole for repeat offender convicted of possession of cocaine with intent to distribute); *United States v. Valenzuela,* 646 F.2d 352, 354 (9th Cir.1980) (life sentence without parole for drug offender found guilty of participating in continuing criminal enterprise). We conclude, therefore, that the sentence imposed on Zavala does not violate the eighth amendment.

AFFIRMED.