889 F.2d 929
 The OKLAHOMA EDUCATION ASSOCIATION, an incorporated
association; Russ Islas and Susan Stone, as individuals and
as members of the Oklahoma Education Association; The
Oklahoma Public Employees Association, an incorporated
association; Sherri Moore and Linda G. Cupp, as individuals
and as members of the Oklahoma Public Employees Association,
Plaintiffs-Appellants,
v.
The ALCOHOLIC BEVERAGE LAWS ENFORCEMENT COMMISSION; and
Winston Boydston, Bill Porter, Robert Berry, Joan
Blankenship, Heber Finch, and Randall Spears, as members of
the Alcoholic Beverage Laws Enforcement Commission; and Ron
Willis, as the Director of the Alcoholic Beverage Laws
Enforcement Commission, Defendants-Appellees.
 Nos. 87-2627, 87-2668.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 7, 1989.
 
 Richard B. Wilkinson (Karen L. Long, of the Oklahoma Educ. Ass'n, of Oklahoma City, Okl.; and Dennis W. Arrow, of Edmond, Okl., with him on the briefs), of the Oklahoma Education Ass'n, of Oklahoma City, Okl., for plaintiffs-appellants Oklahoma Educ. Ass'n; and Russ Islas and Susan Stone, as individuals and as members of the Oklahoma Education Association.
 Frank E. Walta, of Oklahoma City, Okl., on the briefs for plaintiffs-appellants Oklahoma Public Employees Ass'n; and Sherri Moore and Linda G. Cupp, as individuals and as members of the Oklahoma Public Employees Association.
 William Kurt Morgan (Robert H. Henry, Atty. Gen. of Oklahoma, and Michael Scott Fern, Asst. Atty. Gen., Deputy Chief, Civ. Div., were on the brief), of the Alcoholic Beverage Laws Enforcement Com'n, for defendants-appellees.
 Before TACHA, and McWILLIAMS, Circuit Judges, and BRATTON, District Judge.*
 TACHA, Circuit Judge.
 
 
 1
 Oklahoma Education Association, Oklahoma Public Employees Association, and various individually named plaintiffs ("state employees") appeal a district court order upholding both article 28, section 8 of the Oklahoma Constitution and its statutory counterpart, title 37, section 511(D) of the Oklahoma Statutes ("the Oklahoma provisions"), against claims that the Oklahoma provisions violate the first and fourteenth amendments of the United States Constitution, U.S. Const. amends. I, XIV. On appeal, the state employees argue that the district court erred in holding that the Oklahoma provisions do not violate either: (1) the equal protection clause of the fourteenth amendment; (2) the due process clause of the fourteenth amendment; or (3) the first amendment. The state employees further allege that the district court erred in its application of the twenty-first amendment, U.S. Const. amend. XXI, to their equal protection and due process claims. We affirm.
 
 
 2
 The parties stipulated to the underlying facts giving rise to this action. The Oklahoma Education Association has approximately 46,000 members, who are teachers, support employees and school administrators in the Oklahoma public school system. The Oklahoma Public Employees Association has approximately 11,000 members, who pursue many different professions and occupations as public employees. These associations, along with several named individuals, brought this action challenging Oklahoma's constitutional and statutory provisions prohibiting state employees from working in any phase of the alcoholic beverage business. Three of the individually named plaintiffs were unable to continue their part-time jobs in the alcoholic beverage business due to their inability to obtain employee liquor licenses.
 
 
 3
 On September 18, 1984, the citizens of Oklahoma in a referendum vote repealed former Article 27 of the Oklahoma Constitution and replaced it with current Article 28. Section 8 of Article 28 continues the former Article 27, section 8 language forbiding state employees from engaging in any phase of the alcoholic beverage business.
 
 
 4
 Article 28, section 8 of the Oklahoma Constitution states in relevant part:
 
 
 5
 The State of Oklahoma, or any political subdivision thereof, or any board, commission, agent, or employee thereof, is hereby prohibited from engaging in any phase of the alcoholic beverage business, including the manufacture, sale, transportation, or distribution thereof, at wholesale or retail, and the maintenance, ownership, or operation of warehouses or alcoholic beverage stores; except that if the voters of a county in which a state lodge is located approve retail sale of alcoholic beverages by the individual drink for on-premises consumption, and if the State Legislature enacts legislation approving such sales in any such lodges located in any such counties, then such sales are authorized.
 
 
 6
 After the public referendum, the Oklahoma legislature enacted the statutory equivalent of Article 28, section 8 in title 37, section 511(D) of the Oklahoma Statutes. The practical significance of the Oklahoma provisions is that Oklahoma state employees can neither obtain liquor licenses nor work in positions in the alcoholic beverage business that require such licenses.
 
 I.
 
 7
 The state employees contend that the district court erred in holding that the Oklahoma provisions do not violate the equal protection clause. This is a question of law that we review de novo. See In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988).
 
 
 8
 Before we analyze the state employees' equal protection claim we first must determine the appropriate level of judicial scrutiny to apply to the Oklahoma provisions. It is well settled that economic and social legislation generally is presumed valid. We will sustain such legislation if the classifications drawn by the statute are rationally related to a legitimate state interest. See Cleburne v. Cleburne Living Center 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). When legislation categorizes persons using "suspect" classifications, such as race or national origin, we depart from the general rule and apply strict scrutiny, sustaining the law only if it is narrowly tailored to serve a compelling state interest. See id. We subject "quasi-suspect" classifications based on characteristics beyond an individual's control, such as gender, illegitimacy, and alienage, to intermediate review, and will uphold the law only if it is substantially related to an important or substantial state interest. See id. at 440-41, 105 S.Ct. at 3254-55; Plyler v. Doe, 457 U.S. 202, 223-24, 102 S.Ct. 2382, 2397-98, 72 L.Ed.2d 786 (1982). The class here, public employees, clearly does not fall within a suspect or quasi-suspect category triggering a level of scrutiny more searching than a rational relationship test.
 
 
 9
 We will apply strict scrutiny, however, if the state law impinges upon fundamental rights protected by the Constitution. See, e.g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (right of a uniquely private nature); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (right to associate for advancement of political beliefs); Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (right to vote). The state employees contend that we should apply strict scrutiny to the Oklahoma provisions because the ability to pursue additional employment in the alcoholic beverage business is a fundamental right. We disagree.
 
 
 10
 The Supreme Court characterizes the ability to pursue a particular line of employment as a fundamental right only in the limited context of the privileges and immunities clause, U.S. Const. Art. IV, Sec. 2, where a state government attempts to limit employment opportunities to state or municipal residents. See Supreme Court of N.H. v. Piper, 470 U.S. 274, 279-80, 105 S.Ct. 1272, 1275-76, 84 L.Ed.2d 205 (1985) (limiting bar admission to state residents); United Bldg. & Constr. Trades Council v. Mayor of Camden, 465 U.S. 208, 220-22, 104 S.Ct. 1020, 1028-29, 79 L.Ed.2d 249 (1984) (requiring 40% of employees working on city construction projects to be city residents). The purpose of the privileges and immunities clause is to promote interstate harmony and the national economic union. See Piper, 470 U.S. at 279-80, 105 S.Ct. at 1275-76; United Bldg., 465 U.S. at 220-22, 104 S.Ct. at 1028-29. The ability of residents of one state to pursue their occupation in other states is fundamental to this purpose.
 
 
 11
 The state employees argue that we should extend the Supreme Court's fundamental right analysis under the privileges and immunities clause to the equal protection clause. The Court, however, treats equal protection clause cases in which a party claims a fundamental right to pursue a particular line of employment differently from cases in which the right is asserted under the privileges and immunities clause. In the equal protection clause context, the Supreme Court has never recognized a fundamental right to pursue a particular line of employment. See United Bldg., 465 U.S. at 219, 104 S.Ct. at 1028 (no fundamental right to government employment under the equal protection clause); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (same); see also Edelstein v. Wilentz, 812 F.2d 128, 132 (3d Cir.1987) (citing Murgia, 427 U.S. at 313, 96 S.Ct. at 2566) ("The Constitution does not create fundamental interests in particular types of employment."). Rather, the Supreme Court applies a rational relationship test to state legislation restricting employment opportunities when the restrictions are not based on suspect or quasi-suspect classifications. See Murgia, 427 U.S. at 312-15, 96 S.Ct. at 2566-68; Dandridge v. Williams, 397 U.S. 471, 485 and note 17, 90 S.Ct. 1153, 1161, and note 17, 25 L.Ed.2d 491 (1970) ("[rational relationship] standard [ ] has been consistently applied to state legislation restricting the availability of employment opportunities.").
 
 
 12
 The Supreme Court's most recent definition of fundamental rights under the fourteenth amendment is in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The Rodriguez plaintiffs contended that the Texas system for financing public schools violated the equal protection clause because per pupil expenditures for school districts varied according to each school district's property tax base. The Rodriguez Court rejected the argument that the category of fundamental rights under the equal protection clause should be expanded to include education:
 
 
 13
 It is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws. Thus, the key to discovering whether education is "fundamental" is not to be found in comparisons of the relative societal significance of education as opposed to subsistence or housing. Nor is it to be found by weighing whether education is as important as the right to travel. Rather, the answer lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution.
 
 
 14
 Id. at 33-34, 93 S.Ct. at 1296-97 (emphasis added).[1] Our Constitution clearly does not explicitly or implicitly guarantee the right to pursue government employment free from restrictions on additional employment. We decline the state employees' invitation to expand the category of fundamental rights protected by the fourteenth amendment.
 
 
 15
 We hold that the state employees do not have a fundamental right under the equal protection clause to pursue additional employment in the alcoholic beverage business. We therefore will uphold the Oklahoma provisions if the classifications created by the provisions are rationally related to legitimate state interests. See Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979).
 
 
 16
 Under the rational relationship test the state employees have the heavy burden of proving that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." New York State Club Ass'n, Inc. v City of New York, 487 U.S. 1, ----, 108 S.Ct. 2225, 2236, 101 L.Ed.2d 1 (1988) (quoting Vance, 440 U.S. at 111, 99 S.Ct. at 949).
 
 
 17
 Oklahoma's purposes for prohibiting state employees from simultaneously working in the alcoholic beverage industry are threefold: (1) to prevent direct conflicts of interest with those state employees who have some authority over the administration and enforcement of the state's liquor laws; (2) to prevent the public perception that the state is involved with liquor trafficking; and (3) to prevent the state's encouragement of liquor consumption.
 
 
 18
 The Oklahoma provisions are rationally related to the State's declared purposes. Among those state employees who are charged with administering and enforcing the Oklahoma liquor laws, potential conflicts of interest could arise if the state granted those employees licenses to distribute and sell liquor. The Oklahoma provisions are not irrational merely because the statutory scheme does not provide for individual hearings to examine the degree of the actual conflict of interest for each of those employees. See Murgia, 427 U.S. at 316, 96 S.Ct. at 2568; Gosney v. Sonora Indep. School Dist., 603 F.2d 522, 526 (5th Cir.1979) (citing Murgia, 427 U.S. at 316-17, 96 S.Ct. at 2568-69).
 
 
 19
 The legislature could rationally believe that if the state allowed its employees to work as waiters, waitresses, bartenders, i.e., in jobs that involve direct sales of liquor to the public, the public could perceive that state employees were trafficking in liquor and/or encouraging alcoholic beverage consumption. Patrons who know that the person selling or serving them liquor also is a state employee could associate that person with the state's promotion of the liquor industry and the consumption of alcoholic beverages. The state employees did not convince the district court, nor do they convince us, that the factual assumption embedded in the Oklahoma provisions, namely that public perception may be influenced adversely if state employees are allowed to work in any phase of the alcoholic beverage business, could not reasonably be conceived to be true.
 
 
 20
 The state employees emphasize the state's lack of empirical and statistical evidence. The state, however, is not compelled to verify its legislative assumptions with empirical evidence. See Vance, 440 U.S. at 110 n. 28, 99 S.Ct. at 949 n. 28. "Common sense propositions" can be sufficient to uphold social and economic legislation analyzed under the rational relationship test. See id. at 111-12, 99 S.Ct. at 950; Murgia, 427 U.S. at 315, 96 S.Ct. at 2567.
 
 
 21
 The state employees argue that several "loopholes" in the Oklahoma provisions render the scheme irrational. One alleged loophole is that the Oklahoma provisions do not require licenses for all jobs related to the alcoholic beverage business. For example, security guards do not need liquor licenses to work in liquor stores. A second alleged loophole is the Oklahoma Alcoholic Beverage Laws Enforcement Commission's ("ABLE") unwritten policy stated in the parties' stipulation number sixteen:
 
 
 22
 Public employees may participate as a stockholder, officer or director of a legitimate corporation maintaining a Mixed Beverage, Brewers, Distiller, Winemaker, Oklahoma winemaker, Rectifier, Bottle Club, Caterer, Special Event, Airline/Railroad Beverage, Industrial Carrier, Private Carrier, Bonded Warehouse, Storage, Nonresident Seller and Sacramental Wine Supplier license, as long as they are not involved in the direct sale and distribution of alcoholic beverages ....
 
 
 23
 (emphasis added). The state employees argue that these alleged loopholes are inconsistent with the stated purposes of the Oklahoma provisions because they allow state employees to work in select jobs related to the alcoholic beverage industry if the position does not require a license or falls within ABLE's nonenforcement policy.
 
 
 24
 We first note that we will not invalidate a statute because the legislature has not fashioned the classification in question with "mathematical nicety." Dandridge, 397 U.S. at 485, 90 S.Ct. at 1161 (1970) (quoting Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)). The Constitution does not prohibit the legislature from focusing on only part of a problem: "the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). We find, moreover, that these alleged loopholes rationally could be construed as consistent with the second and third public perception-oriented purposes underlying the Oklahoma provisions. Security guards and corporate officers are not involved directly in selling and serving liquor to patrons. The Oklahoma voters and the legislature could assume that the public would be less likely to associate those state employees with the alcoholic beverage business because the employees' influence on public perception would be insignificant.
 
 
 25
 Another alleged loophole is the Oklahoma provisions' exception allowing state lodge employees who work in counties that have approved retail liquor sales by the individualized drink to obtain liquor licenses. See Okla. Const. art. 28, Sec. 8; Okla.Stat.Ann. tit. 37, Sec. 511(D) (Supp.1989). The state employees argue that this exemption is inconsistent with the state's public perception-oriented goals and therefore renders the Oklahoma provisions irrational. We disagree. Stipulation of fact number 27 of the parties states that this exemption only involves 26 state lodge employees, making its effect on public perception de minimis. Furthermore, the licensing exemption is necessary for those 26 state lodge employees to perform their state job. Unlike the plaintiffs, the state lodge employees are not seeking liquor licenses to obtain other jobs in addition and unrelated to their state employment. Having sanctioned the sale of alcoholic beverages at state-owned lodges, the state can provide a limited exception that makes it legal for state lodge employees to serve those drinks.
 
 
 26
 Finally, the state employees point out that the Oklahoma legislature has excluded sales of 3.2 percent beer from its licensing requirements. The state has discretion to define the categories of beverages that it will regulate pursuant to its powers under the twenty-first amendment.[2] Oklahoma need not attack every facet of a perceived evil. It can focus its resources on forms of alcohol more potent than 3.2 percent beer.
 
 
 27
 We hold that the Oklahoma provisions do not violate the equal protection clause. Oklahoma's decision to deny liquor licenses to all state employees except those who work in certain state lodges is rationally related to achieving Oklahoma's legitimate state interests.[3]
 
 II.
 
 28
 The state employees contend that the Oklahoma provisions violate substantive and procedural due process. This is a question of law that we review de novo. See In re Ruti-Sweetwater, Inc., 836 F.2d at 1266.
 
 
 29
 Our review of legislation for substantive due process violations is well defined.
 
 
 30
 When local economic or social regulation is challenged as violating substantive due process, courts consistently defer to legislative determinations as to the desirability of particular statutory schemes. Unless a state law trammels fundamental personal rights, we are to presume that state legislatures have acted within their constitutional power and are to require only that the law "bears a reasonable relation to the state's legitimate purpose...."
 
 
 31
 Murphy v. Matheson, 742 F.2d 564, 575 (10th Cir.1984) (citations omitted) (quoting Exxon Corp. v. Governor of Md., 437 U.S. 117, 125, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978)). Our holding in Part I of this opinion that the state employees do not have a fundamental right to pursue additional employment in the alcoholic beverage business applies equally to the state employees' substantive due process claim. Because the Oklahoma provisions do not affect fundamental personal rights, we apply a deferential rational relationship test.
 
 
 32
 For the reasons discussed in Part I of this opinion, we find that the Oklahoma provisions are rationally related to legitimate state interests. We therefore hold that the Oklahoma provisions do not violate the state employees' substantive due process rights.
 
 
 33
 We also reject the state employees' claim that the Oklahoma provisions deprive them of procedural due process. The state employees argue that they have a procedural right to individualized hearings so that each individual state employee can present evidence showing that he or she does not have a conflict of interest warranting denial of a liquor license. The state employees' argument misconstrues the nature of procedural due process rights. The Oklahoma legislature has rejected an individualized hearing approach to liquor licensing and has instead adopted a liquor licensing scheme that flatly prohibits any state employee from obtaining a liquor license unless the employee works in a state lodge authorized to serve alcoholic beverages. "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process--the legislative process." 2 R. Rotunda, J. Novak & J. Young, Treatise on Constitutional Law: Substance and Procedure Sec. 17.8 at 251 (1986) [hereinafter Rotunda]; see Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).
 
 
 34
 The state employees' claim that individualized hearings are necessary to redress the "arbitrariness" of the Oklahoma provisions is nothing more than a veiled challenge to the substance of the Oklahoma provisions. The purpose of procedural due process is to provide a hearing to ensure that the statute's commands are fairly and not erroneously applied to an individual. See Mackey v. Montrym, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979); Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 1808-09, 60 L.Ed.2d 323 (1979). But "there is no requirement of a procedure to determine the basis for a[ ] [state] action which affects an individual where there are no factual issues in dispute." Rotunda, Sec. 17.8 at 250; see Codd v. Velger, 429 U.S. 624, 627-29, 97 S.Ct. 882, 883-85, 51 L.Ed.2d 92 (1977) (per curiam). It is undisputed that the state employees are in fact state employees and therefore are expressly prohibited by statute from obtaining liquor licenses in Oklahoma. A prior individualized hearing is not necessary for the ABLE to fairly and correctly apply this express prohibition of the Oklahoma provisions and deny a state employee's application for a liquor license.
 
 III.
 
 35
 The state employees argue that the Oklahoma provisions violate their first amendment right to association by restricting their right to work in the alcoholic beverage business. We disagree. The right to association protects personal affiliations such as family relationships that are characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Roberts v. United States Jaycees, 468 U.S. 609, 619-20, 104 S.Ct. 3244, 3250-51, 82 L.Ed.2d 462 (1984).
 
 
 36
 Conversely, an association lacking these qualities--such as a large business enterprise--seems remote from the concerns giving rise to this constitutional protection. Accordingly, the Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse that would not apply to regulations affecting the choice of one's fellow employees.
 
 
 37
 Id. at 620, 104 S.Ct. at 3250-51 (emphasis added). We hold that the right to association simply is not at stake in this case.
 
 
 38
 For the above reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 Honorable Howard C. Bratton, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 The state employees emphasize that by the Oklahoma Alcoholic Beverage Laws Enforcement Commission's own calculation, potentional income of $297,600,000 is foreclosed to them because they cannot pursue additional employment in the alcoholic beverage business. It is clear from the Supreme Court's discussion of fundamental rights under the equal protection clause in Rodriguez and under the fourteenth amendment due process clause in Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972), that constitutionally protected rights are determined by the nature of the interest asserted, not its weight. Contrary to the state employees' argument, we cannot create constitutional rights based on the amount of money at stake
 
 
 [2]
 The twenty-first amendment provides: "The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, Sec. 2
 
 
 [3]
 The twenty-first amendment plays no role in our analysis of the validity of the Oklahoma restrictions on secondary employment opportunities for state employees. Therefore we do not address the state employees' argument that the district court erred in its application of the twenty-first amendment to their equal protection and due process claims