**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Derek Aragon MENDES,**
**Defendant–Appellant.**

**No. 89–4070.**

United States Court of Appeals,
Tenth Circuit.

Aug. 28, 1990.

---

435

Ronald J. Yengich (Earl Xaiz of Yengich, Rich, Xaiz & Metos, Salt Lake City, Utah, with him on the brief) of Yengich, Rich, Xaiz & Metos, Salt Lake City, Utah, for defendant-appellant.

Dee V. Benson (Bruce D. Lubeck, Asst. U.S. Atty., with him on the brief), U.S. Atty., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, TACHA, Circuit Judge, and VAN BEBBER, District Judge.[*]

TACHA, Circuit Judge.

Defendant Derek Mendes appeals his conviction for possession with intent to distribute cocaine and heroin, 21 U.S.C. section 841(a), and raises various constitutional challenges to his ten-year minimum mandatory sentence imposed pursuant to 21 U.S.C. section 841(b)(1)(B). We affirm.

## I.

This case arises out of an FBI investigation of a three-person drug trafficking operation headed by Mendes and located in West Jordan, Utah. After an FBI informant made controlled purchases of heroin from Mendes's assistants, Michael Gallegos and Jesus Lopez, the FBI obtained arrest warrants for Mendes, Gallegos, and Lopez, and a search warrant for Mendes's home. On December 2, 1986, FBI agents and state and local law enforcement officers attempted to execute the warrants. The officers went to Mendes's residence in West Jordan, but the only persons at home were two teenagers, who told the officers that Mendes had left the night before to go to an apartment with Gallegos, Lopez, and three unknown women. While some officers continued to search the Mendes residence, other officers left to look for Mendes, Gallegos, and Lopez at a nearby apartment complex where the officers knew that Lopez lived.[1] Along the way to the apartment, the officers learned that a third group of officers had just arrested Gallegos at a laundromat near the apartment complex and found a key to apartment number 38 in Gallegos' pocket during a search of Gallegos incident to his arrest. When both groups of officers arrived at the apartment complex, they saw cars in the parking lot that FBI agents had previously seen Mendes and Lopez drive. The officers used the key taken from Gallegos to enter the apartment, and inside they found Mendes and Lopez, along with Lopez's wife and two children. On a kitchen table in plain view were .3 grams of cocaine, a razor blade, and a rolled up twenty dollar bill. Mendes and Mrs. Lopez were seated at this table when the officers entered the apartment. During a protective sweep of the apartment, an FBI agent observed a small safe and a set of scales inside a bedroom closet.

After taking the occupants of the apartment into custody, the officers secured the apartment and obtained a search warrant. When FBI agents executed the search warrant, they seized 800 grams of cocaine of 92% purity and 124 grams of black tar heroin of 47% purity from the apartment.

Mendes, Gallegos, and Lopez were indicted on December 10, 1986. Gallegos and Lopez entered guilty pleas to various drug offenses. Mendes opted for a jury trial. On March 27, 1987, a jury convicted Mendes on all three counts of the indictment: (1) conspiracy to distribute controlled substances and conspiracy to possess with intent to distribute; (2) aiding and abetting the distribution of controlled substances; and (3) possession with intent to distribute controlled substances. On November 17, 1987, the district court sentenced Mendes to 40 months incarceration. On November 23, Mendes filed a notice of appeal. Seven months later on June 1, 1988, the government requested a writ of mandamus[2] from this court on the narrow grounds that 21 U.S.C. section 841(b)(1)(B) required the district court to impose a mini-

---

[*] Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. The officers subsequently learned that Mendes had rented the apartment for Lopez.

2. The United States was forced to seek a writ of mandamus because Mendes's criminal acts occurred before November 1, 1987, the effective date of the Sentencing Reform Act. Thus, 18 U.S.C. section 3742(b)(1), the portion of the Sentencing Reform Act that gives the government a right to direct appeal from a sentence imposed in violation of law, was inapplicable to the case. *See United States v. Jenkins,* 866 F.2d 331, 332–33 (10th Cir.1989).

mum sentence of five years, enhanced to a minimum of ten years because of Mendes's prior felony drug conviction. Before we heard oral argument on the government's request for a writ of mandamus, Mendes withdrew his November 23 notice of appeal.[3] We granted the writ, concluding that Mendes fell within the sentencing enhancement provision of 21 U.S.C. section 841(b)(1)(B) because he constructively possessed the 800 grams of cocaine and 124 grams of heroin found in the apartment. *See United States v. Jenkins*, 866 F.2d 331, 334–35 (10th Cir.1989). We remanded to the district court with instructions to initiate proceedings under former Federal Rule of Criminal Procedure 35[4] to conform Mendes's sentence to comply with the mandatory language of section 841(b)(1)(B). *Id.* at 335.

The district court resentenced Mendes to a ten year mandatory term of incarceration on May 11, 1989. Mendes filed a second notice of appeal on May 15, 1989 challenging both his new sentence and his earlier conviction on the third count of the indictment, possession with intent to distribute controlled substances.

## II.

The first question before us is whether we have jurisdiction to hear Mendes's attack on his conviction on count three of the indictment. To resolve this question we must address the finality of the district court's November 17 judgment. We hold that the judgment was final and that Mendes's appeal of his conviction—though not his sentence—is untimely.

Section 1291 of title 28 of the United States Code provides that federal courts shall have jurisdiction over appeals from all final decisions of the district courts. *See* 28 U.S.C. § 1291. In criminal cases the final judgment rule prohibits appellate review until after conviction and imposition of sentence. *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, ——, 109

S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989). It is undisputed that the November 17 judgment included both conviction and (albeit erroneous) sentence. The November 17 judgment is therefore facially "final."

■ Mendes contends that the November 17 judgment was not final because it contained an illegal sentence. This contention is meritless. Under Mendes's reasoning, an erroneous or illegal sentence would never be final and we could never assume jurisdiction over an appeal from that illegal sentence to correct the illegality. Yet the correction of such errors is the fundamental purpose of appeal. Mendes has confused finality with correctness. We reject the contention that an illegal sentence renders a judgment nonfinal for purposes of appeal.

■ Mendes also contends that our grant of a writ of mandamus undermined the finality of the November 17 judgment. We disagree. Our grant of the writ did not render the November 17 judgment nonfinal; the judgment still remained a final order of the district court. Rather, our writ required the district court to issue a new order resentencing Mendes in accordance with law. The new order by the district court merely superseded the illegal sentence contained in the first judgment. It did not reopen the first judgment to further proceedings.

■ An analogy to appeal is instructive. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 8, 103 S.Ct. 927, 932, 74 L.Ed.2d 765 (1983) (mandamus and appeal are different forms of appellate review). The grant of remand on appeal does not reopen the order appealed from; instead, remand commences a new proceeding which will ultimately terminate in another final order. The first final order cannot be challenged in an appeal of the second final order. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3901, at 1 (Supp.1990) (there

---

3. In his response brief concerning the government's request for the writ, Mendes admits that he withdrew his November 23 notice of appeal.

4. At the time that the government requested the writ of mandamus, Rule 35(a) provided that the district "court may correct an illegal sentence at any time...." Fed.R.Crim.P. 35(a).

is no right to take a second appeal from the same judgment of the district court after the first appeal has been determined). Such is the case here. When Mendes withdrew his November 23 notice of appeal, he abandoned the issues concerning his conviction raised by that appeal. *See Yates v. United States*, 308 F.2d 737, 738 (10th Cir. 1962) (where no appeal taken from earlier judgment of conviction, later appeal from an order revoking probation and imposing sentence cannot reach back and challenge conviction). Consequently, Mendes is foreclosed from attacking his conviction in his later appeal from the district court's second order resentencing him in accordance with our writ. *See id.* at 738. Any other interpretation would undermine the doctrine of finality and lead to endless relitigation of issues previously resolved. The effect of our writ was to leave the finality of the district court's November 17 judgment intact while stripping a portion of the judgment, the erroneous sentence, of its validity. The sentencing portion of the first judgment was then superseded by the district court's second order, which is also a final, appealable order.

Accordingly, we hold that the November 17 judgment was final and appealable. By withdrawing his November 23 notice of appeal, Mendes has waived his right to appeal issues conclusively established by that judgment, in this case his conviction on count three of the indictment. Mendes's second notice of appeal, filed after the district court's resentencing, is timely, and we may consider his challenges to the validity of the sentence imposed by the second order.

### III.

Mendes contests the district court's May 11, 1989 order resentencing him in accordance with the provisions of 21 U.S.C. section 841(b)(1)(B).

Section 841(b)(1)(B) provides that persons who knowingly or intentionally possess with intent to distribute:

   (i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

   (ii) 500 grams or more of a mixture or substance containing a detectable amount of ...

   (II) cocaine ...

shall be sentenced to a term of imprisonment which may not be less than 5 years.... If any person commits such a violation after one or more prior convictions for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a state, the United States, or a foreign country relating to [controlled substances] ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years....

Mendes has a prior felony conviction for a drug offense. The district court therefore resentenced him to a mandatory minimum term of ten years imprisonment after finding his conviction of possession with intent to distribute controlled substances involved the possession of 800 grams of cocaine and 124 grams of heroin.

### A.

Mendes challenges the constitutionality of section 841(b) on the grounds that, as applied to him, the statutory classification scheme violates the equal protection and due process components of the fifth amendment, U.S. Const. amend. V. Mendes argues that section 841(b)'s classification scheme is not rationally related to its alleged congressional purpose of punishing drug "kingpins" because the scheme uses the weight of the mixture containing the cocaine and heroin rather than the weight of the drugs if they were separated out of the mixture.

As social legislation, 21 U.S.C. section 841(b) is presumed valid and we will sustain its nonsuspect classification system against an equal protection challenge if it is rationally related to a legitimate state interest. *See Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 932 (10th Cir.1989). Essentially the same rational relationship test applies for a substantive due process challenge. *See id.* at 935.

■ We begin our analysis by examining the "state interest" underlying section 841(b). Mendes's contention that the congressional purpose behind section 841(b) is to punish drug "kingpins" is not entirely accurate. Congress created section 841(b) using a market-oriented approach for the purpose of punishing severely all large volume drug traffickers regardless of their position in the distribution chain. *See United States v. Bishop*, 894 F.2d 981, 985–86 (8th Cir.1990), *petition for cert. filed* (June 6, 1990) (No. 89–7708); *United States v. Whitehead*, 849 F.2d 849, 859–60 (4th Cir.), *cert. denied*, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); *United States v. Savinovich*, 845 F.2d 834, 839 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

Congress was well aware that its punishment scheme did not focus on "the number of doses of the drug that might be present in a given sample." Instead, Congress chose a "market-oriented approach" to focus on those "who are responsible for creating and delivering very large quantities of drugs," including the "managers of the retail level traffic" selling "substantial street quantities." Congress clearly thought that dealers who possessed substantial street quantities of drugs deserved severe punishment. The classification scheme's focus on quantity is thus directly related to Congress' desire to prevent both wholesale and retail distribution of illegal drugs. A classification scheme, therefore, of mandatory punishments for possessors of more than 500 grams of cocaine is not unreasonable or irrational. Although a street dealer possessing impure cocaine *could* be sentenced to a greater term than a higher-level dealer possessing a smaller amount of pure cocaine, "equal protection of the laws does not require Congress in every instance to order evils hierarchially according to their magnitude and to legislate against the greater before the lesser."

*Savinovich*, 845 F.2d at 839 (emphasis in original) (citations and footnote to floor debate omitted). We agree with the reasoning of *Savinovich* and find that the classification system of section 841(b) based on the total weight of the mixture or medium containing the drugs rather than the pure weight of the drugs is rationally related to Congress's goal of punishing both drug "kingpins" and managers at the retail level who are involved in distributing substantial street quantities. *Whitehead*, 849 F.2d at 859. We therefore hold that Mendes's ten year mandatory minimum sentence under section 841(b) for possession with intent to distribute 800 grams of 92% pure cocaine and 124 grams of 47% pure heroin does not violate equal protection and due process under the fifth amendment.

**B.**

■ Mendes also mounts a constitutional challenge to the facial validity of section 841(b). Mendes argues that section 841(b) is irrational because it would provide the same penalty for a minor player in the drug trade who possesses a single gram of heroin dissolved into a kilogram of baking powder as for a drug kingpin who possesses a kilogram of pure cocaine. We do not reach this argument because Mendes's sentence was for possession of 92% pure cocaine and 47% pure heroin. Faced with a similar challenge to the facial validity of section 841(b) by a defendant convicted of possession of more than 80% pure cocaine, the Ninth Circuit in *United States v. Zavala–Serra*, 853 F.2d 1512 (9th Cir.1988), and *United States v. Kidder*, 869 F.2d 1328 (9th Cir.1989), held that the defendant lacked standing to raise the issue, reasoning that "[a] defendant cannot claim a statute is unconstitutional in some of its reaches if the statute is constitutional as applied to him." *Zavala–Serra*, 853 F.2d at 1517; *Kidder*, 869 F.2d at 1335.

Both *Kidder* and *Zavala–Serra* rely on *United States v. Raines*, 362 U.S. 17, 21–22, 80 S.Ct. 519, 522–23, 4 L.Ed.2d 524 (1960), as support for this principle. Two more recent Supreme Court decisions, *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and *Broadrick v. Oklahoma*, 413

U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), elaborate on the principle stated in *Raines*. The *Allen* Court stated:

> A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment.

*Allen*, 442 U.S. at 154–55, 99 S.Ct. at 2223 (citations omitted). *Broadrick* elaborates:

> Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. A closely related principle is that constitutional rights are personal and may not be asserted vicariously. These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws.

*Broadrick*, 413 U.S. at 610–11, 93 S.Ct. at 2914–15 (citations omitted).

Based on the principle articulated in *Raines*, *Allen*, and *Broadrick*, we hold that Mendes lacks standing to challenge the facial validity of section 841(b) based on speculation about an extraordinary hypothetical situation involving small amounts of illegal drugs highly diluted in a mixture or inert medium.

### C.

█ Mendes argues that section 841(b) also violates the fifth amendment due process clause under the rule articulated in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), because it allegedly creates a factual presumption that someone possessing a large quantity of any substance containing illegal drugs is a drug "kingpin." We disagree.

In *Leary* and *Tot* the Supreme Court struck down statutes which created a factual presumption for an element of the crime charged, thereby unconstitutionally relieving the government of its burden of proving guilt beyond a reasonable doubt. *See Leary*, 395 U.S. at 49–54, 89 S.Ct. at 1555–1557 (defendant's possession of marijuana gives rise to factual presumption that defendant knew the marijuana was illegally imported); *Tot*, 319 U.S. at 466–72, 63 S.Ct. at 1244–47 (possession of firearm or ammunition by defendant previously convicted of a crime of violence gives rise to factual presumption that the defendant acquired the firearm or ammunition through an interstate transaction). In contrast, the defendant's status as a drug "kingpin" is simply not relevant to application of section 841(b). Thus, Mendes's fifth amendment due process argument based on *Leary* and *Tot* fails because drug kingpinship is not an element that the government must prove under section 841(b).[5]

### IV.

Mendes contends that section 841(b) should be declared void on its face as violative of the eighth amendment, U.S. Const. amend. VIII. Mendes argues that the punishment under section 841(b) is disproportionate to the crime under *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), based on the following hypothetical:

> § 841, as now written, permits a sentence of up to life in prison for one who was found to have possessed a weighty but highly diluted mixture of controlled substances. Thus, while one in posses-

---

5. Although not a basis for our decision, we note that the government's burden of proof for sentencing under the Guidelines is a preponderance of the evidence standard, *see United States v.* *Beaulieu*, 893 F.2d 1177, 1181 n. 7 (10th Cir. 1990), not the "beyond a reasonable doubt" standard required for criminal convictions.

sion of a single gram of pure cocaine would be subject to a maximum of one year in prison and a $5,000 fine, one convicted under § 841(a) who had diluted that same single gram into a gallon of water would be subject, under § 841(b) to life imprisonment and a $4,000,000 fine.

(footnote omitted).

■ Mendes's situation, however, greatly differs from this hypothetical in that his sentence derived from his possession of 800 grams of 92% pure cocaine and 124 grams of 47% pure heroin. He received the minimum sentence allowable under section 841(b) for a defendant possessing these quantities who also had a prior felony drug conviction. We find that the severity of Mendes' sentence under section 841(b) is not disproportionate to his offense under *Solem*, and a full *Solem* proportionality analysis is unnecessary on these facts. *See United States v. Colbert*, 894 F.2d 373 (10th Cir.1990) (minimum ten year sentence under section 841(b)(1)(A)(iii) is not violative of the eighth amendment, *cert. denied*, — U.S. —, 110 S.Ct. 2601, 110 L.Ed.2d 281 (1990); *United States v. Brown*, 859 F.2d 974, 977 (D.C.Cir.1988) (per curiam) (minimum five year sentence under section 841(b)(1)(B) is not violative of the eighth amendment). Mendes also lacks standing to challenge the facial validity of section 841(b)'s mandatory minimum penalties based on an extraordinary hypothetical situation. *See* discussion *supra* Part III.B.

The judgment of the district court is AFFIRMED.