**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory L. CORLEY and William E.
Graham, Defendants–Appellants.**

Nos. 89–10185, 89–10193.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 1990.

Decided July 18, 1990.

Stuart Hanlon, San Francisco, Cal., for defendant-appellant Corley.

Robert J. Nelson, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant Graham.

Rory K. Little, Asst. U.S. Attorney, San Francisco, Cal., for plaintiff-appellee.

Before SCHROEDER and CANBY, Circuit Judges, and KEEP,* District Judge.

SCHROEDER, Circuit Judge:

Gregory Corley and William Graham, Corley's father, appeal the sentences imposed upon them under the Sentencing Guidelines for conspiracy to manufacture and distribute marijuana in violation of 21 U.S.C. § 846.

Corley's principal challenge is to the method used by the district court to measure the amount of marijuana for purposes of determining his base offense level under the Drug Quantity Table of the Guidelines. Graham's primary argument is that the district court violated Federal Rule of Criminal Procedure 32(c)(3)(D) by failing specifically to find on the record that Graham had not sufficiently accepted personal responsibility for his criminal conduct to qualify for a two-point reduction under Sentencing Guidelines section 3E1.1(a). We find neither of these arguments to have any merit and affirm.

The father and son defendants pleaded guilty after federal agents raided their growing shed and discovered over 1,300 marijuana plants and additional quantities of dried marijuana "shake" leaves. At sentencing, the district court adopted the probation officer's decision to disregard "800 seedlings" found in the defendants' shed. The district court similarly ignored the dried shake leaves found in the shed and sentenced the defendants on the basis of the remaining 500 plants.

Corley's initial attack on the application of the Guidelines rests upon vagueness grounds. *See United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979) ("sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute") (citing *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948); *United States v. Brown*, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1948)); *United States v. Colon–Ortiz*, 866 F.2d 6, 8 (1st Cir.1989). He argues that the Guidelines are vague because they call for both dry weight and numbers of plants to be used to calculate the base offense level. Therefore, he argues that the district court wrongly sentenced him on the basis of a quantity of 500 plants. Instead, Corley asks us to resolve any vagueness or inconsistency in his favor. He contends that the potential yield of all 1,300 plants (as estimated by his expert to be between 7.6 and 9.85 pounds) should be the measure of marijuana for the base offense level.

█ Judge Orrick disposed of this argument in a well-reasoned opinion. *See United States v. Graham*, 710 F.Supp. 1290 (N.D.Cal.1989). As Judge Orrick's Opinion and Order first noted:

The Guideline's Drug Quantity Table lists measures for both weight and number of plants for calculating offense levels for marijuana. The Guidelines state no reason for this distinction. The reason, however, seems clear.

Marijuana is found in either live plant form prior to harvest or dry leaf form after harvest. Weight is the appropriate measure for dry marijuana, but a distinction must be made for live plants prior to harvest. Such a distinction is important, because live plants weigh more than marijuana in its dry leaf form. Therefore, when marijuana is seized prior to harvest, the Guidelines contemplate the

---

* Honorable Judith N. Keep, United States District Judge for the Southern District of California, sitting by designation.

court using the number of plants as the measure.

Weight is irrelevant because the actual amount of usable marijuana had the plant been allowed to fully grow is unknown.

*Id.* at 1291. Moreover, Judge Orrick relied upon section 841(b)(1)(D) which provides:

In the case of less than 500 kilograms of marihuana, except in the case of 100 or more marihuana plants *regardless of weight,* ... such person shall ... be sentenced to a term of imprisonment of not more than five years.

21 U.S.C. § 841(b)(1)(D) (emphasis added)).[1] We agree with Judge Orrick. Under the Guidelines, when live marijuana plants are found, their quantity is appropriate for determining base offense level. When the marijuana leaves have been dried, their weight should be used.

■ Second, Corley argues that the Guidelines are ambiguous because when dry marijuana is found with live plants, the Drug Equivalency Table of the Guidelines does not indicate whether to convert live plants into their "dry" equivalent or visa versa. He contends that the method used would vary the sentence. This assertion is incorrect.

The Drug Quantity Table of the Sentencing Guidelines lists amounts of contraband in a column on the left hand side of the page and a corresponding "Base Offense Level" on the right. In Corley's case the district court correctly read 500 plants to correspond to a Base Offense level of 20. *See* U.S.S.G. Drug Quantity Table at 2.38 (Oct.1987 ed.).

Additionally, the Guidelines contain Drug Equivalency Tables which indicate in relevant part that "1 Marihuana/Cannabis Plant = 0.1 gm of heroin/100 gm of marihuana." *Id.*, Drug Equivalency Tables at 2.43. The Application Notes accompanying the Drug Quantity Table explain that the Drug Equivalency Tables are normally used when a defendant is sentenced on the basis of a substance not specifically listed in the substantive drug statutes, 21 U.S.C.

§§ 801 *et seq.*, or when it is necessary to combine "differing controlled substances to obtain a single offense level." U.S.S.G., Drug Quantity Table, application note 10.

Since the district court sentenced Corley on the basis of the plants alone, and because marijuana is listed in the statute, the court had no occasion to refer to the Drug Equivalency Table. Even if it had, there would have been no inconsistency. The Drug Equivalency Table lists: "1 Marihuana/Cannabis Plant = 0.1 gm of heroin/100gm of marihuana." U.S.S.G., Drug Equivalency Tables. Accordingly, level 20 of the Drug Quantity Table corresponds to "40–59 KG Marihuana, 400–599 Marihuana Plants." Therefore, even if the district court had converted the plants into their "dry" equivalents, the sentence would have been the same.

■ Corley also contends that only the 349 stalks taller than one foot should have been counted. While the Guidelines do not define the word "plant," a standard dictionary offers the following definition:

[A]ny of numerous organisms constituting the kingdom Plantae, being typically characterized by lack of locomotive movement or rapid motor response, by absence of obvious nervous or sensory organs though possessing irritability as indicated by specific response to stimuli, by possession of cell walls composed of cellulose, and by a nutritive system in which carbohydrates are formed photosynthetically through the action of chlorophyl and organic nutrients are not required, and exhibiting a strong tendency to alternation of a sexual with an asexual generation though one or the other may be greatly modified or almost wholly suppressed....

*Webster's Third New International Dictionary (Unabridged)* 1731 (P.B. Gove. ed. 1971). Neither that definition nor any offered by Corley would limit "plants" to mature and healthy organisms. *See United States v. Bruce M. Carlisle,* slip op. 6527, 6530–31, 907 F.2d 94, 96 (9th Cir. 1990) ("cuttings" with sufficient root formation to survive are "plants"). There is

---

**1.** This subsection has since been amended. *See* Pub.L. No. 100–690, § 6479(3).

no basis for Corley's position that only plants taller than one foot be counted. Indeed, the district court clearly seems to have given defendants the benefit of the doubt by excluding seedlings from the sentencing computations.

 Graham argues that the district court violated Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure [2] by failing to make a specific factual finding that he had not personally accepted responsibility for his conduct as required for a two-point reduction in offense level under section 3E1.1(a). The district court was presented with Graham's presentence report in which the probation officer determined that Graham was "in a state of denial as to some of the reasons for his involvement, and although he accepts responsibility for his choices, he tends to minimize his part in the offense." On this basis the probation officer recommended that Graham not receive the two-point reduction. Graham's counsel previously filed a memorandum challenging that recommendation.

At Graham's sentencing hearing, the district court asked counsel whether there were any misstatements of fact in the presentence report, and Graham's counsel replied that there were none. Graham's counsel then argued the legal issue before the court concerning the two-point reduction. The government's legal argument followed. Immediately after the government made its legal argument against the reduction, the district court indicated its acceptance of the government's position and proceeded to sentence in accordance with the presentence report's recommendations. The district court adopted the presentence report and its recommendations, thereby denying Graham a two-point reduction for acceptance of responsibility.

Under these circumstances, there was no need for further findings. *See United States v. Rigby*, 896 F.2d 392 (9th Cir.1990). In *Rigby*, as in this case, "the district court clearly stated that it found the position as stated in the probation office's [presentence report] to be the correct one. There was no inadequacy of findings. The record at the sentencing hearing reflects no confusion on anyone's part as to what the district court decided." *Id.* at 394. This case is thus unlike *United States v. Carlisle*, 907 F.2d 94 (9th Cir.1990) (per curiam), where nothing in the record of the sentencing hearing indicated that the district court had considered the defendant's objection to the presentence report.

The appellants' additional contentions do not demonstrate any reversible error. We need not decide whether one of Corley's convictions should have been excluded from his criminal history score. Excluding the conviction, the score is the same. *See United States v. Turner*, 881 F.2d 684, 688 (9th Cir.) (no review of inconsequential dispute), *cert. denied*, — U.S. —, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989). Also, there was no violation of Rule 32(c)(3)(A) regarding the number of marijuana plants used to compute Corley's sentence; nor was there any error subject to review in Graham's lawful sentence within the proper guideline range. *See United States v. Pelayo–Bautista*, 907 F.2d 99, 101 (9th Cir.1990). We do not review the district court's discretionary refusal to depart downward. *United States v. Morales*, 898 F.2d 99 (9th Cir. 1990).

AFFIRMED.

---

2. **Rule 32(c)(3)(D) provides:**
   If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them alleged any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.