**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Rodney K. LEE, Defendant–Appellee.**

No. 91–3194.

United States Court of Appeals,
Tenth Circuit.

Feb. 24, 1992.

Nina Goodman (Lee Thompson, U.S. Atty., Kim M. Fowler, Asst. U.S. Atty., D. Kansas with her on the briefs), Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Cyd Gilman, Asst. Federal Public Defender, Wichita, Kan., for defendant-appellee.

Before BALDOCK and BARRETT, Circuit Judges, and DAUGHERTY*, District Judge.

BARRETT, Senior Circuit Judge.

In this appeal by the United States, we must decide whether the district court erred in concluding that defendant-appellee Rodney K. Lee (Lee), indicted and convicted under 21 U.S.C. § 846 (attempt to possess with intent to distribute marijuana), was not subject to the mandatory minimum five year sentencing provision of 21 U.S.C. § 841(b)(1)(B)(vii) on constitutional equal protection grounds.

That statute provides that a defendant convicted of an offense involving "100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight ... shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years...."

The district court concluded that, in this case, the mandatory minimum sentencing provision was unconstitutional. On appeal, the United States contends that Lee's sentence should be vacated and the case re-

manded for resentencing under 21 U.S.C. § 841(b)(1)(B)(vii).

*Facts*

Lee entered a guilty plea to a one-count superseding indictment charging that on or about October 26, 1990, he knowingly and intentionally attempted to possess 294 marijuana plants with intent to distribute marijuana. The marijuana was grown entirely indoors at Lee's rural residence near Savery, Kansas. The plants were located in an upstairs bedroom, equipped with paraphernalia commonly associated with the indoor cultivation of marijuana, including grow lights, transformers, a sun circle, irrigation tubing, fertilizer, electric fans, scales and other items.

At an evidentiary hearing, Mr. Doug McVay, offered by Lee as an expert witness, testified, over the objection of the United States, that: of the 294 plants being grown by Lee, some 64 were on their way to maturity; of the 230 smaller plants, only one-half would have likely made it to maturity; had the plants grown by Lee been allowed to grow to full maturity, they would have produced one or two ounces of usable material; under ideal conditions, a marijuana plant could not be expected to produce one kilogram of marijuana material; and, at the time of seizure, the 294 plants would have produced eight to eight and one-half kilos of marijuana.

At the conclusion of Mr. McVay's testimony, the district court observed that it calculated that the "[U]nited States seized approximately nine kilos of marijuana for which he's to have five years in prison." (R., Vol. II, Tab 50, p. 45).

In argument to the court at the hearing, defense counsel stated that the evidence would make it clear that the "ratio that Congress has used in setting those mandatory minimums (in 21 U.S.C. § 841), namely that one plant, one marijuana plant, is considered to be equal to one thousand grams or one kilo of other marijuana material, such as processed marijuana that has al-

---

* The Honorable Frederick A. Daugherty, Senior United States District Judge for the Western    District of Oklahoma, serving by designation.

ready been harvested," *id.* at 5, is unconstitutional on equal protection grounds. Counsel for the United States argued that Mr. McVay's testimony was irrelevant because the statute does not deal in "ratio" but rather "[I]t says a hundred kilograms of marijuana or a hundred plants, regardless of weight. The statute does not say that one plant equals one kilo, just says that if you have a hundred plants your [sic] sentenced to the mandatory minimum of five years in prison, regardless of how much they weigh, regardless of how much marijuana it would ultimately produce." *Id.* at p. 9. Counsel for the United States further argued that "If he was a good marijuana grower, those same plants would have produced twice that much or three times that much. That's what Mr. McVay was saying. He was saying he wasn't a very good cultivator, and that's not the point. The point is he was growing marijuana in an amount and in a potential and scale that Congress has deemed deserves a five-year mandatory minimum. And there is a rational basis for that. The rational basis is that you punish the people on the scale of their operation, and he had 294 plants, and each of those 294 plants could conceivable produce another 294 plants.... He's got the potential to grow a huge amount of marijuana ... a hundred marijuana plants is a large-scale operation." *Id.* at pp. 45–46.

### The District Court's Order

In its "Memorandum and Order" entered April 12, 1991, the district court held that the application of the five-year mandatory minimum sentence provision contained in 21 U.S.C. § 841(b)(1)(B)(vii) would cause an unconstitutional violation of Lee's equal protection guarantees. *United States v. Lee,* 762 F.Supp. 306 (D.Kan.1991).

The court recognized that while the "[c]reation of mandatory penalties based on the possession of a given number of marijuana plants is rationally related to a legitimate government objective, and hence is constitutionally valid," still:

> The present case involves another issue entirely—not whether punishment may be based on the possession of a given number of plants, but whether the number of plants specified in the statute as triggering enhanced punishment bears any rational relationship to the threshold for enhanced punishment calculated on the basis of plant weight. Put another way, is there any rational relationship between 100 marijuana plants (regardless of their status in the growth cycle), which triggers the mandatory sentence requirement of 21 U.S.C. § 841(b), and the 100 kilograms of marijuana "mixture or substance" which also requires the imposition of mandatory sentencing?

> The court finds that there is not. Evidence adduced at the hearing ... indicates that the equation of one marijuana plant to one kilogram (1000 grams) of marijuana substance is purely arbitrary.

> ... The issue is not whether Congress had a rational basis for establishing mandatory minimum punishment based on the possession of a given number of marijuana plants or a given weight of marijuana. The issue is whether there was any rational basis for the number of marijuana plants (100) actually selected by Congress as triggering the minimum sentence, in comparison to the weight (100 kg.) of marijuana material which also triggers the minimum sentencing provision.

*Id.* at 307.

The district court relied upon *United States v. Osburn,* 756 F.Supp. 571 (N.D.Ga. 1991) as being "directly relevant here" even though the *Osburn* court approached the 100 marijuana plants issue from a due process standpoint rather than equal protection. *Id.* at 308.

### The Sentencing Statute

The statute at issue, 21 U.S.C. § 841(b)(1)(B)(vii), *supra,* was enacted as part of a graduated series of penalties adopted by Congress for offenses involving the trafficking of marijuana and marijuana plants. As to the latter, offenses involving less than 50 marijuana plants are punishable by up to five years imprisonment; those involving 50–99 plants, up to twenty

years imprisonment; those involving 100 to 999 plants by five to forty years; and those involving 1000 or more plants by ten years to life imprisonment. 21 U.S.C. § 841(b)(1)(A)–(D).

§ 841(b)(1)(B)(vii) was enacted in 1988 as part of the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 6479, 102 Stat. 4181, 4381–4382. Prior thereto, § 841(b) punished marijuana offenses solely on the basis of weight, except that possession of "100 or more marijuana plants regardless of weight" was punishable by up to twenty years imprisonment. There was no mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(C) (1982 and Supp. IV 1986). Other penalty provisions of the Act dealt with, *inter alia*, cocaine, PCP and LSD.

No House or Senate reports accompanied the legislation. The legislative history of the Anti–Drug Abuse Act submitted by Senator Biden explains the determination made by the Congress to assess the mandatory minimum sentence against one in possession of marijuana plants, to-wit:

Section 6479, Marijuana Plants—

Section 21 U.S.C. § 841(b)(1)(A) provides for a mandatory minimum 10 years penalty for distribution, or possession with intent to distribute, of "1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana." Defendants charged with possessing large quantities of marijuana plants have argued that the statutory definition of marijuana specifically excludes the seeds and stems of the plant, and that therefore these items may not be counted toward the 1,000 kilogram requirement.

The government has argued in response that the term "mixture or substance" encompasses all parts of the lands as harvested, notwithstanding the statutory definition of "marijuana", but defendants contend that the "mixture or substance" language applies only to marijuana after it has been prepared for illegal distribution. The defendants' position has been adopted by at least one court. *United States v. Miller*, 680 F.Supp. 1189 (E.D.Tenn.1988). The

amendment is intended to curtail this unnecessary debate by providing that the minimum penalty is triggered either by the weight of the "mixture of substance" or by the number of plants regardless of weight. The bill uses 1,000 plants as the equivalent of 1,000 kilograms. 134 Cong.Rec. § 17360 (daily ed. November 10, 1988).

*Appellate Contention*

The district court, having ruled that the mandatory minimum five-year sentence required under 21 U.S.C. § 841(b)(1)(B)(vii) would violate Lee's equal protection guarantees, sentenced Lee to thirty-three (33) months imprisonment. This was determined under the Sentencing Guidelines, based upon Lee's offense level of 18 and criminal history category of III, calling for a sentencing range of 33 to 41 months.

The United States argues that the district court erred in holding that the five-year mandatory sentencing provision, *supra*, was unconstitutional. The government contends that the district court misapplied the rational basis test by ignoring the valid government interests that support the mandatory minimum sentencing provision of the statute. Further, the government argues that the district court's equal protection analysis rested on an irrelevant factor—its determination of the amount of harvested marijuana a marijuana plant could produce.

*Discussion and Decision*

We review all legal issues de novo. *Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir.1991); *Oklahoma Education Ass'n v. Alcoholic Beverage Laws Enforcement Com'r*, 889 F.2d 929 (10th Cir.1989).

In *Marshall v. United States*, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974), the Supreme Court explained that the concept of equal protection embodied in the Due Process Clause of the Fifth Amendment requires some "rational basis" for statutory distinctions, i.e., some relevance to the purposes for which the classification is made. Here, the legislative history is

sparse. However, the Supreme Court has never insisted that a legislative body articulate its reasons for enacting the statute. Rather, where there are plausible reasons for legislation, the inquiry is at an end. *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

■ All legislation involves classification. The fact that some persons who have almost equally strong claims to particular treatment are placed on different sides of the line, does not render legislation irrational; although the line may have been drawn differently, still this is a matter of legislative rather than judicial consideration. The Supreme Court has made it clear that statutory classifications will be set aside as violative of equal protection only if no grounds can be conceived to justify them as rationally related to a legitimate state interest. *Schilb v. Kuebel,* 404 U.S. 357, 364, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971). *See also, New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 810–14, 96 S.Ct. 2488, 2498–500, 49 L.Ed.2d 220 (1976). And the "[e]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). In the instant case, no contention has been advanced that the classification impermissibly interferes with the exercise of a fundamental right or that it operates to the disadvantage of a suspect class. Accordingly, the "rational basis" test applies.

In *United States v. Doyan,* 909 F.2d 412, 416 (10th Cir.1990), we held that a statute requiring those convicted and sentenced in federal courts to pay the costs of their incarceration had a rational relationship to a legitimate governmental interest "[w]hether the purpose ... is to punish, deter, or to spare the taxpayers a substantial expense that has been generated by an intentional criminal act." In *Doyan,* there was no legislative history relied upon; rather, the rational basis was that reasoned by the court. Thus, in *United States v. Calderon,* 655 F.2d 1037, 1039 (10th Cir. 1981), this court rejected an equal protection challenge to 18 U.S.C. § 351(e) which made it a crime for anyone to "assault" a member of Congress on grounds which were not anchored to legislative history:

> ... [a]bsent peculiar disadvantage to a suspect class or interference with the exercise of a fundamental right, a statutory classification does not violate equal protection unless it lacks a rational basis.... Members of Congress are highly visible and frequently controversial. Singling them out for special protection is eminently rational.

*See also McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) ("Still legislatures are presumed to have acted within their constitutional powers despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.")

■ The Fifth Amendment's due process clause encompasses equal protection principles. *Mathews v. de Castro,* 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976); *Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). And statutory classifications will not be set aside on equal protection grounds if any ground can be conceived to justify them as rationally related to a legitimate governmental interest. *New Orleans v. Dukes, supra,* 427 U.S. 297 at 303, 96 S.Ct. at 2516. "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. De Bartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). Thus, in *United States v. Hatch,* 925 F.2d 362, 363 (10th Cir.1991), we observed that the power and authority to define and fix the punishment for felony convictions is entirely a matter of legislative prerogative. And in *United States v. Martin,* 786 F.2d 974, 976 n. 2 (10th Cir.

1986), we stated that fixing criminal punishment for specific crimes is a legislative, not a judicial, function.

In *Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) the Supreme Court rejected an equal protection challenge to a federal sentencing statute following a conviction of selling blotter paper containing LSD in violation of 21 U.S.C. § 841(a), holding that Congress had a rational basis for its choice of remedies. The Court held that the penalty scheme set forth in the Anti–Drug Abuse Act of 1986 is intended to punish severely large-volume drug traffickers at any level and that by measuring the quantity of the drugs according to the "street weight" of the drugs in the diluted form in which they are sold, rather than according to the net weight of the active component, constituted a rational sentencing scheme. The Court acknowledged that the Sentencing Guidelines increase the penalty for persons who possess large quantities of drugs, regardless of their purity. Nothing in the Constitution, held the Court, required that penalties for drug offenses reflect different defendants' individual degrees of culpability.

In *Chapman,* the petitioners were convicted of selling ten sheets (1000 doses) of blotter paper containing LSD. 21 U.S.C. § 841(b)(1)(B) provides for a 5–year mandatory minimum sentence for the offense of distributing more than one gram of "a mixture or substance containing a detectable amount" of LSD. Petitioner's pure LSD weighed only 50 milligrams. However, the court included the total weight of the blotter paper and the LSD, 5.7 grams, in calculating the sentences.

*Chapman* favorably observed that in *United States v. Mendes,* 912 F.2d 434 (10th Cir.1990), this court held the ten-year minimum mandatory sentence imposed pursuant to 21 U.S.C. § 851(b)(1)(B) to be constitutional against an equal protection challenge. There, appellant Mendes argues that § 841(b)'s classification scheme is not rationally related to the alleged congressional purpose of punishing drug "kingpins" because the scheme uses the weight of the mixture containing the cocaine and heroin rather than the weight of the drugs if they were separated out of the mixture. In *Mendes,* we relied on *United States v. Savinovich,* 845 F.2d 834, 839 (9th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988) in holding that the classification system of § 841(b) based on the total weight of the mixture or medium containing the drugs rather than the pure weight of the drugs is rationally related to Congress's goal of punishing both drug "kingpins" and managers at the retail level who are involved in distributing substantial street quantities:

> Congress was well aware that its punishment scheme did not focus on "the number of doses of the drug that might be present in a given sample." Instead, Congress chose a "market-oriented approach" to focus on those "who are responsible for creating and delivering very large quantities of drugs," including the "managers of the retail level traffic" selling "substantial street quantities." Congress clearly thought that dealers who possessed substantial street quantities of drugs deserved severe punishment. The classification scheme's focus on quantity is thus directly related to Congress' desire to prevent both wholesale and retail distribution of illegal drugs. A classification scheme, therefore, of mandatory punishments for possessions of more than 500 grams of cocaine is not unreasonable or irrational. Although a street dealer possessing impure cocaine *could* be sentenced to a greater term than a higher-level dealer possessing a smaller amount of pure cocaine, "equal protection of the laws does not require Congress in every instance to order evils hierarchically according to their magnitude and to legislate against the greater before the lesser."

*Id.* at p. 439 (quoting from *Savinovich, supra,* 845 F.2d at 839, with emphasis in the original and citations and footnote to floor debate omitted).

The record in this case demonstrates that Lee, when arrested, was growing 294 marijuana plants. In *United States v. Eves,* 932 F.2d 856 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 236, 116

L.Ed.2d 192 (1991), the defendant grew 1100 to 1200 cuttings from eight parent plants. We there observed, quoting *United States v. Fitol*, 733 F.Supp. 1312, 1315 (D.Minn.1990), that Congress "intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment," and that Congress "found a defendant who is growing 100 newly planted marijuana plants to be just as culpable as one who has successfully grown 100 kilograms of marijuana." We held that the definition intended by Congress of the word "marijuana plant" for purposes of the Sentencing Guidelines was:

a Marijuana "plant" includes those cuttings accompanied by root balls. Whether the plant could survive on its own would not be an issue; if it looks like a "plant"—that is, if it has a reasonable root system—it will be considered a "plant." No expert need testify, no experiment with instrumentation to monitor whether gaseous exchange is occurring need be conducted, no elaborate trimester or viability system need be established. If a cutting has a root ball attached, it will be considered a plant.

*Id.* at 860.

■ We must hold that the district court erred in finding/concluding that because a single marijuana plant could not produce a kilogram of marijuana substance, the statute punished defendants who grow marijuana plants more severely than those who possess harvested marijuana and is, accordingly, violative of equal protection guarantees. We hold, contrary to the district court, that this distinction does not render 21 U.S.C. § 841(b)(1)(B)(vii) unconstitutional on equal protection grounds. We agree with Judge Devitt's observation in *Fitol, supra*, that Congress intended to punish growers of marijuana by the scale or potential of their operation and not just the weight of the plants seized at a given moment. In our view, the cultivation of marijuana plants creates a greater potential for abuse than possession of harvested marijuana.

■ In *United States v. Motz*, 936 F.2d 1021 (9th Cir.1991), the court held, and we agree, that there is no constitutional impediment to imposition of the same penalty for an offense involving one marijuana plant to the penalty for an offense involving 100 grams of dried marijuana. Defendants-appellants Motz and Langer were sentenced under the 1988 Sentencing Guidelines for growing 1838 plants, each treated as the equivalent of 100 grams of marijuana. The Court held:

They challenge the constitutionality of the "1 plant = 100 gm" equivalency on the basis that there is no evidence that it is accurate. Motz and Langer misunderstand the significance of the conversion table. The table does not state that the yield of the plant is 100 grams, but rather that the offense level for a crime involving one marijuana plant be equal to the penalty for an offense involving the quantity of dried marijuana the plant would yield. *See United States v. Chan Yu–Chong*, 920 F.2d 594, 597–98 (9th Cir.1990) (quoting *United States v. Savinovich*, 845 F.2d 834 (9th Cir.), *cert. denied*, 488 U.S. 943 [109 S.Ct. 369, 102 L.Ed.2d 358] ... (1988) (sentencing scheme that penalizes offense involving large quantity of below-street-quality heroin more harshly than smaller quantity of purer heroin is constitutional); *see also United States v. Corley*, 909 F.2d 359, 361–62 (9th Cir.1990) (seedling is a plant for guidelines purposes); *United States v. Carlisle*, 907 F.2d 94, 95 (9th Cir.1990) (cutting is a plant for guideline purposes). We have recognized that the eventual yield of a plant is unknown. *Corley*, 909 F.2d at 361.

Further, the Guidelines are consistent with congressional intent as expressed in 21 U.S.C. § 841(b). Congress has provided for imprisonment of ten years to life for offenses involving 1000 or more marijuana plants. 21 U.S.C. § 841(b). . . .

*Id.* at pp. 1025–26.

There would be no dried marijuana unless there were marijuana plants. The Congress had a rational basis for establishing the respective offense levels.

*See also, United States v. Webb,* 945 F.2d 967 (7th Cir.1991) *(cert. denied,* — U.S. ——, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992)) (Rule for translating number of marijuana plants into specific weight on Sentencing Guidelines' Drug Quantity Table was not unconstitutional on ground that rule was not based on actual yield of each plant; court rejected appellant's scientific evidence of the average yields of marijuana plants, i.e., that one marijuana plant would not produce 100 grams of "smokable product;" there is no correlation to weight or yield because such was not the basis of the Congressional sentencing scheme as revealed by the legislative history of 21 U.S.C. § 841); *United States v. Lewis,* 762 F.Supp. 1314, 1317 (E.D.Tenn.1991) ("There is at least one other plausible rationale for treating a marijuana plant as one kilogram of marijuana regardless of weight. Congress and the Sentencing Commission might well have concluded that it wanted to focus on those who grow marijuana and thus at the top of the drug distribution chain with the idea of controlling the proliferation of the product at its source. It is not holy writ that the touchstone for a drug offense sentence must be the weight of the drug. A decision might well have been made to treat growers more severely than those lower down on the distribution chain. The point is it cannot be said here that there are no facts which compel the conclusion that there is no rational legislative purpose behind U.S.S.G. § 2D1.1. Therefore, the Court respectfully rejects the result reached in *Osburn.*"); *United States v. Corley, supra* (In applying the Sentencing Guidelines, it is proper, in case of live marijuana plants, to compute the quantity of the plants in determining the base offense level; when marijuana leaves have been dried, their weight should be used); *United States v. Bradley,* 905 F.2d 359 (11th Cir.1990) (Sentencing Guidelines, U.S.S.G. §§ 2D1.1(a)(3), 2D1.1, comment, (n. 10), 18 U.S.C.App.; Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(a)(1) and 21 U.S.C. § 841(a)(1), in effect at time of defendant's sentence contemplated using number of marijuana plants, rather than the weight of the plants, as appropriate measure for sentencing; Sentencing Commission must have contemplated that growing plant ought to be treated as more marijuana than its actual weight, given tables establishing one marijuana plant as equivalent of 100 grams of marijuana); *United States v. Cross,* 916 F.2d 622 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991) (District Court could impose mandatory minimum sentence under 21 U.S.C. §§ 841, 841(a)(1), 841(b)(1)(B)(vii), 846, upon determination of the quantity of marijuana plants based on preponderance of the evidence at time of sentencing); *United States v. Coppock,* 919 F.2d 77 (8th Cir. 1990) (Upheld mandatory minimum five-year sentence where evidence supported finding that defendant was growing more than 100 marijuana plants in his home); *United States v. Fitol, supra,* (Marijuana "cuttings" grown by defendant constituted marijuana plants under 21 U.S.C. § 841(b)(1)(B)(vii) providing for a mandatory five-year minimum sentence for violating the "100 or more marijuana plants regardless of weight" provision; the "cuttings" had roots and was planted by defendant with intent to produce full-size plants for harvest; Congress intended to punish growers of marijuana by the scale or potential of their operation and not just the weight of the plants seized); *United States v. Graham,* 710 F.Supp. 1290 (N.D.Cal. 1989) (Weight of plants is irrelevant because the actual weight of usable marijuana had the plant been allowed to fully grow is unknown; no distinction is made between "indoor" and "outdoor" plants in either the Guidelines or the statutes; there is no basis in the Guidelines or § 841 for acceptance of argument that weight of the plants should be used to determine the base offense level). *Contra, United States v. Osburn, supra.*

We direct that the district court vacate its judgment and simultaneously proceed to resentence Defendant–Appellee Lee pursuant to 21 U.S.C. § 841(b)(1)(B)(vii).

REVERSED and REMANDED.