**UNITED STATES of America, Appellee,**

v.

**Joel PROYECT, Defendant–Appellant.**

**No. 472, Docket 92–1347.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 19, 1992.

Decided March 15, 1993.

**85**

Anthony J. Colleluori and John J. Marshall, Jr. (Liotti & Skelos, Garden City, NY, of counsel), for amici curiae National Ass'n of Criminal Defense Lawyers and the New York State Ass'n of Criminal Defense Lawyers.

Before: PRATT and ALTIMARI, Circuit Judges, and GERALD W. HEANEY, Circuit Judge of the Eighth Circuit, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Proyect appeals his sentence following his plea of guilty to knowingly and intentionally manufacturing in excess of 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1). Proyect was sentenced in the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge,* to five years' imprisonment, a four-year term of supervised release, and a $50 mandatory special assessment. *See* 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B).

## BACKGROUND

A six-month federal drug enforcement investigation of Proyect and the thirty-acre property upon which he resides in upstate New York provided sufficient information for the government to believe that a greenhouse and two fenced-in areas on his land contained live marijuana plants. The simultaneous execution of an arrest and search warrant at his home in August of 1991 interrupted Proyect's ambitious horticultural activities; the government seized and destroyed a number of live and recently harvested marijuana plants found on his property.

While the precise number of marijuana plants attributable to Proyect was disputed at sentencing, the district judge found that Proyect manufactured at least 110 plants, and he declined to make further findings concerning other plants, because doing so would not have affected Proyect's sentence. This finding required the district judge to sentence Proyect to the statutory minimum of five years, although he did so with apparent reluctance.

Ronald E. DePetris, New York City (Carro, Spanbock, Kaster & Cuiffo, of counsel), for defendant-appellant.

David L. Wales, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Paul G. Gardephe, Asst. U.S. Atty., of counsel), for appellee.

On appeal, Proyect raises issues which we discuss below concerning (1) the constitutionality of the mandatory minimum provision, 21 U.S.C. § 841(b)(1)(B), and the applicable sentencing guidelines provision, § 2D1.1; (2) whether congress intended the mandatory minimum provision to apply to defendants who have manufactured marijuana for their personal use; and (3) whether male marijuana plants, which contain diminished levels of the psychogenic chemical THC, must be excluded from sentencing calculations, based upon Proyect's reading of the statutory purpose or as compelled by constitutional concerns.

## DISCUSSION

### A. Personal Use.

Proyect and amici (referred to simply as "Proyect") raise an interesting argument for the first time on appeal, questioning congressional intent to apply the mandatory minimum sentence statute, 21 U.S.C. § 841(b), to defendants who do not distribute marijuana, but who grow it only for themselves.

Proyect concedes that the language of the statute contains no personal-use exception. 21 U.S.C. § 841(b) provides that

any person who violates subsection (a) of this section [making it unlawful to knowingly or intentionally manufacture, distribute, dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance], shall be sentenced as follows

(1)(B) In the case of a violation of subsection (a) of this section involving—

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight * * *

such person shall be sentenced to a term of imprisonment which may not be less than 5 years * * *.

Id.

Proyect argues on appeal that the statutory language imposing such a severe penalty must be construed in light of its legislative history, which establishes that the drafters targeted the mandatory minimum sentence to ensnare middle-level drug dealers—those who, because of the large quantities of marijuana which they may introduce into the market, pose greater risks to society.

We may not address this contention, however, as it was not adequately developed in the district court. As we held in *United States v. Madkour*,

sentencing disputes under the guidelines may be appealed * * * as long as the defendant 'first present[s] * * * [his argument] to the district court for determination.' *United States v. Irabor*, 894 F.2d 554, 555 (2d Cir.1990). The same rule applies to claims of improper application of mandatory minimum sentences, for such sentences are applied under, not outside of, the sentencing guidelines.

930 F.2d 234, 236 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991). *See also United States v. Papadakis*, 802 F.2d 618, 621 (2d Cir.1986) (double jeopardy claim on appeal waived as not raised in trial court), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 159 (1987).

At sentencing Proyect's counsel argued that Proyect was not the "major, serious drug trafficker" that congress aimed to penalize with the mandatory minimum statute; however, all of his arguments on this point were in connection with his contentions about the gender of marijuana plants, discussed below. References to Proyect's largely personal use of the seized marijuana were offered to justify a downward departure from the sentencing guidelines range in the event that the district judge held the mandatory minimum sentence inapplicable. Since these statements did not put the issue clearly before the district court, we do not consider the issue as properly before us.

### B. Drug Quantity Standards Under Statute and Guidelines.

■ Proyect argues that the equation of 100 live marijuana plants with 100 kilos of harvested marijuana, found in both the guidelines and the statute, is undercut by

scientific evidence that suggests that one live plant cannot consistently produce one kilogram of the harvested substance. Accordingly, he contends, that equation is arbitrary and irrational, and therefore unconstitutional.

We rejected this contention in *United States v. Murphy*, 979 F.2d 287 (2d Cir. 1992), where we held that congress had a rational basis for its choice of penalties; congress could have "reasonably concluded that individuals who grew 100 or more plants were as culpable as individuals found guilty of offenses involving 100 or more kilograms of marijuana." *Id.* at 290.

We further held in *Murphy* that § 2D1.1 of the sentencing guidelines is constitutional as its "one-kilo-one-plant" formula for offenses involving in excess of 50 marijuana plants is consistent with congressional intent as expressed in § 841(b)(1)(B)(vii). U.S.S.G. § 2D1.1(c) ("In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana * * *."); *Murphy*, 979 F.2d at 290–91 (citing *United States v. Osburn*, 955 F.2d 1500, 1506 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 223, 121 L.Ed.2d 160 (1992); *United States v. Motz*, 936 F.2d 1021, 1025 (9th Cir.1991)). Since this panel is bound by the *Murphy* opinion, we need devote no further attention to this argument.

## C. *Marijuana Plant Gender.*

■ Proyect's final contention is that we must interpret 21 U.S.C. § 841(b)(1)(B)(vii) and § 2D1.1 of the sentencing guidelines to exclude male marijuana plants from the calculations in order for those provisions to be constitutional. He maintains that the government should exclude one-half of the marijuana plants seized on his property as representing the typical yield of commercially useless male plants that contain substantially lower quantities of the psychoactive chemical THC. If the male plants in this case were excluded, then the mandatory minimum sentence would not apply, because the district court found that Proyect manufactured only 55 female plants.

At sentencing, both parties submitted affidavits by experts concerning the use of male plants in marijuana cultivation. Apparently, marijuana plants grow in stages after they germinate from seeds. During the initial vegetative growth stage, the plants do not show any sex differentiation. After the growth stage, the plants enter the flowering stage, when the plants indicate their sex. Because male marijuana plants produce a markedly lesser psychotropic effect than that obtained from smoking or ingesting the leaves or buds of female plants, they have less commercial value and are not generally marketed. Most importantly to Proyect's argument, the experts agreed that it is standard practice for growers to discard the male plants in order to avoid pollinating the female plants, which reduces their yield as well as their quality. Male plants may, however, be mixed in with female plant material as filler, and they are necessary to produce marijuana seeds.

The district court rejected the statutory construction portion of this argument, saying at Proyect's sentencing,

> I am certainly persuaded that if Congress wanted to make a distinction between male and female plants, plants that produced relatively more or relatively less of a usable marijuana product, it could have done so.

■ We review *de novo* the district court's construction of § 841(b)(1)(B), as well as its decision to reject a challenge to the constitutionality of these provisions. *Murphy*, 979 F.2d at 289; *In re Bellamy*, 962 F.2d 176, 178 (2d Cir.1992). The plain language of § 841(b) permits no distinctions for marijuana plant gender, and when the language of the statute is clear, its plain meaning ordinarily controls its construction. *See Lewis v. Grinker*, 965 F.2d 1206, 1221 (2d Cir.1992). *See also Moskal v. United States*, 498 U.S. 103, 113–17, 111 S.Ct. 461, 468–70, 112 L.Ed.2d 449 (1990); *United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) (courts applying criminal laws generally must follow plain and unambiguous meaning of statutory language). Congress's definition of marijuana is very expansive:

[a]ll parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

21 U.S.C. § 802(16).

Our circuit has previously noted the extremely broad scope of the statutory definition: " 'Congress intended to prohibit possession of *all varieties* of marijuana.' " *Madkour*, 930 F.2d at 239 (quoting *United States v. Kinsey*, 505 F.2d 1354 (2d Cir. 1974)) (emphasis added).

Other circuits, rejecting arguments like that made by Proyect, have confirmed that "Congress intended to outlaw all plants popularly known as marijuana to the extent that those plants possess THC". *United States v. DeLeon*, 955 F.2d 1346, 1350 (9th Cir.1992); *see also United States v. Honneus*, 508 F.2d 566, 574–75 (1st Cir.1974) (congress meant to include any and all marijuana-producing Cannabis when specifying "Cannabis sativa L."), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Walton*, 514 F.2d 201, 202–03 (D.C.Cir.1975); *United States v. Moore*, 446 F.2d 448, 450 (3d Cir.1971), *cert. denied*, 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820 (1972).

The eighth circuit has also recently considered and rejected Proyect's gender-distinction argument. *United States v. Curtis*, 965 F.2d 610, 615–16 (8th Cir.1992) (noting that guidelines do not distinguish between male and female plants). *See also United States v. Webb*, 945 F.2d 967, 968 (7th Cir.1991) (rejecting as irrelevant defendant's argument that only female plants should be counted for sentencing purposes), *cert. denied*, —— U.S. ——, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992).

We join our sister circuits that have held that congress did not intend courts to count only female marijuana plants when determining a defendant's responsibility for drug quantities under § 841(b)(1)(B)(vii). Essentially, congress requires courts to perform this task by applying the simple concept that "a plant is a plant is a plant."

Thus, the statute is clear. As to the parallel provision in the sentencing guidelines, we can read § 2D1.1 no differently, nor does Proyect present us with any reason to do so.

■■ On the constitutional level, we affirm the district court's rejection of Proyect's contention that a gender distinction must be read into § 841(b)(1)(B)(vii) to negate concerns about its constitutionality. To sustain a federal sentencing statute against a due process or equal protection challenge, courts need only find that "Congress had a rational basis for its choice of penalties." *Chapman v. United States*, —— U.S. ——, ——, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991). *See also Madkour*, 930 F.2d at 239–40 (courts may not disregard clear congressional mandate requiring mandatory minimum sentence for 100 or more marijuana plants, however ill-advised they may think congress's exercise of authority to be); *United States v. Mendes*, 912 F.2d 434, 438–39 (10th Cir. 1990) (rejecting equal protection challenge to § 841(b), by determining statute was rationally related to a legitimate state interest); *United States v. Lee*, 957 F.2d 778, 784 (10th Cir.) (same), *cert. denied*, —— U.S. ——, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992).

The legislative history of § 841(b)(1)(B)(vii) makes clear that, in enacting a mandatory minimum sentence based solely upon the number of plants a grower possesses, Congress " 'intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment.' " *United States v. Eves*, 932 F.2d 856, 859 (10th Cir.) (quoting *United States v. Fitol*, 733 F.Supp. 1312, 1315 (D.Minn.1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991). Congress thus sought to avoid creating disparities that would vary merely because of the age and size of particular plants when they were seized. *Webb*, 945 F.2d at 968.

We cannot say that there is no rational basis for congress's use of a graduated series of penalties for drug-trafficking offenses based either upon the quantity of harvested marijuana that defendants may introduce to the market, or the number of

live plants that a defendant may grow with unknown production potential. We, therefore, affirm the district court's rejection of the constitutional challenge to the statute. And, as § 2D1.1 of the sentencing guidelines conforms to the language and legislative intent of 21 U.S.C. § 841, we also affirm the district court's rejection of defendant's challenge to the guidelines provision. *See, e.g., Murphy,* 979 F.2d at 290–91; *United States v. Watson,* 783 F.Supp. 39, 41–42 (D.Conn.1992) (defining standard of constitutionality for guidelines).

Affirmed.