UNITED STATES of America,
Plaintiff–Appellee,

v.

Clarence Edward CODY and Pauline W. Cody, Defendants–Appellants.

Nos. 92–7023, 92–7024.

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1993.

---

Sheldon J. Sperling, Asst. U.S. Atty. (John Raley, U.S. Atty., with him on the briefs), Muskogee, OK, for plaintiff-appellee.

Tom Hebree, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Muskogee, OK, for defendants-appellants.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Clarence Edward Cody ("Mr. Cody") and Pauline W. Cody ("Mrs. Cody") appeal their convictions on identical drug charges, and in Mr. Cody's case, a firearms charge. The

Codys contend that agents of the Oklahoma Bureau of Narcotics ("OBN") violated the Fourth Amendment in conducting a warrantless search of their residence and surrounding area. They specifically challenge the district court's finding that Mr. Cody voluntarily consented to the search. They also challenge as unreliable the evidence that they possessed 1,028 marijuana plants, and contend that the plant/weight equivalency scheme in Sentencing Guidelines violates due process. We affirm their convictions, but remand with instructions to vacate one count of their convictions because it is multiplicious.

## BACKGROUND

Before dawn on August 4, 1991, OBN agents entered a large marijuana patch, spotted earlier by helicopter, on an 80–acre open field tract in southeastern Oklahoma. The agents camouflaged themselves and waited. Shortly after sunrise Mr. Cody drove up to the marijuana patch, got out of his truck, and began to adjust some sprinklers in the patch. He was immediately arrested.

Mr. Cody was taken to a nearby home serving as base for the OBN stakeout. There he signed a form consenting to an OBN search of buildings around the marijuana patch. Transcript of Hearing on Motion to Suppress, Appellee's Appendix, at 95 (hereinafter "S.H.Tr."). The Codys do not challenge the validity of this search on appeal.

OBN agents videotaped and otherwise observed the marijuana patch and surrounding area. Agents eventually gathered, counted, and destroyed 1,028 marijuana plants. They also seized loaded firearms in plain view on the front seat of the truck Mr. Cody had driven to the patch.

Mr. Cody was later taken to the county jail where he met with two OBN agents. The

facts of what took place in this meeting are in dispute. The agents testified that Mr. Cody voluntarily signed two forms, one waiving his *Miranda* rights and the other consenting to a search of his residence and surrounding area, located some distance from the marijuana patch. S.H.Tr. at 63. Mr. Cody admitted meeting with the agents at the jail, but denied signing either the *Miranda* waiver or the second consent form. S.H.Tr. at 95, 98–99.

After obtaining the disputed consent form, agents searched the Codys' home and a nearby building seizing marijuana seeds, pounds of processed marijuana, various documents, utility bills, and cultivation equipment. Mrs. Cody was arrested at this time. The Codys were indicted by a grand jury for the Eastern District of Oklahoma on identical charges, except for Mr. Cody's additional charge related to the firearms in his truck.[1]

The Codys filed a motion to suppress the evidence obtained from the truck, residence, and area surrounding the residence. The district court held a two-day evidentiary hearing on the motion, and most of the evidence at this hearing focused on whether Mr. Cody in fact signed the disputed consent form. Mr. Cody admitted signing the consent form pertaining to the buildings near the marijuana patch, but he flatly denied signing a second consent form. S.H.Tr. at 95, 99. When shown the disputed form with the signature bearing his name, he testified that the signature was not his own. S.H.Tr. at 98. Two OBN agents, on the other hand, testified that they watched Mr. Cody sign the disputed form. S.H.Tr. at 49, 100. Handwriting experts for both the prosecution and defense were unable to reach conclusive opinions as to whether the challenged signature was Mr. Cody's. S.H.Tr. at 149, 164. At the conclusion of the evidence, the district court made findings that Mr. Cody had in fact

1. Count One: conspiracy to manufacture, possess, and distribute marijuana, in violation of 21 U.S.C. § 846; Count Two: manufacturing approximately 1,028 marijuana plants, in violation of 21 U.S.C. § 841(a); Count Three: possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); Count Four: maintaining a place for the purpose of manufacturing, storing, or distributing marijuana, in violation of 21 U.S.C. § 856(a)(2); Count Five: managing or controlling certain buildings, rooms, or enclosures for the purpose of unlawfully manufacturing, storing, or distributing marijuana, in violation of 21 U.S.C. § 856(a)(2). Mr. Cody's Count Six: carrying a firearm during and in relation to a drug trafficking felony, in violation of 18 U.S.C. § 924(c).

signed the second consent form, that his consent was "freely and voluntarily given," and that the agents "had the authority to make the search they did."[2] The district court denied the motion to suppress. S.H.Tr. at 190.

The Codys' first jury trial ended in a hung jury, but they were convicted on all counts in a second jury trial. They now appeal.

## DISCUSSION

### I. Fourth Amendment Violation

The standard of review of a district court's denial of a motion to suppress is well established. The district court's findings of fact must be accepted on appeal unless clearly erroneous, with the evidence viewed in the light most favorable to the district court's findings. *United States v. Pinter*, 984 F.2d 376, 378 (10th Cir.1993); *United States v. Benitez*, 899 F.2d 995, 997 (10th Cir.1990). Moreover, "[a]t a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Walker*, 933 F.2d 812, 815 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). The question of whether a Fourth Amendment violation occurred is a question of law that we review *de novo*. *United States v. Corral*, 970 F.2d 719, 723 (10th Cir.1992).

**2.** The trial court stated its findings and ruling as follows:

[T]he issue that is really before the court is did Mr. Cody sign the document. . . . If he did sign it, I'm convinced that the signature was freely and voluntarily given, and the agents certainly would have had the authority to make the search they did. . . . I am fully aware that the agents said they saw him sign it. The forensics experts say that they are uncertain, and the fact is that . . . the circumstances surrounding the situation providing [sic] no motive nor reason for [OBN agents] to have falsified such a document. Certainly nothing is indicating that Mr. Cody was not cooperating. . . .

In view of the uncertainty by the forensic experts, and it's very understanding, and in considering the testimony of the officers who have testified positively that they did see Mr. Cody sign the documents, I find that he did so

In separate but similar briefs on appeal, Mr. and Mrs. Codys' sole contention pertaining to the denial of their motion to suppress is that "the government failed to introduce any evidence that [Mr. Cody's] consent was knowing and voluntary." Brief of Clarence Edward Cody, at 7.[3] "To admit evidence obtained in a consent search, the district court must find from the totality of the circumstances that (1) the defendant's consent to an officer's search was voluntary and (2) the search did not exceed the scope of the defendant's consent." *United States v. Price*, 925 F.2d 1268, 1270 (10th Cir.1991) (citation omitted). The government always has the burden of proving voluntary consent. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *Walker*, 933 F.2d at 818.

After hearing hours of testimony and viewing numerous exhibits, the district court found that the government met its burden. We accept the court's findings. Ample evidence in the record supports the finding that Mr. Cody signed the disputed consent form, including the form, itself, and two agents' testimony that they watched Mr. Cody sign it. The inconclusive expert testimony and Mr. Cody's denial do not show clear error in the district court's findings, but they do underscore the importance that witness credibility, weighing of the evidence, and inferences and deductions drawn from the evidence—

sign them, that they are valid, and that the motion to suppress the search is overruled. S.H.Tr. at 189–90.

**3.** In their briefs on appeal, the Codys state the fact that agents seized items from Mr. Cody's truck without a warrant. They do not specifically argue on appeal, however, that this seizure violated the Fourth Amendment. Likewise, during the suppression hearing, counsel for the Codys all but ignored the search of the truck in his cross-examination of OBN agents and arguments to the trial judge. Because the Codys did not pursue this issue in the district court and have not argued it on appeal, we consider it waived. *See Culver v. Torrington*, 930 F.2d 1456, 1461 (10th Cir.1991). If we were to address the merits, we think the record supports the government's contention that the seizure was constitutional under the "plain view" doctrine. *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990).

all matters strictly for the district court—had in the court's deliberations.

■ The district court made the required findings in this case, stating that Mr. Cody's consent was "freely and voluntarily given" and that the "agents had the authority to make the search they did." S.H.Tr. at 189–90. In making these findings, the court discussed the totality of the circumstances surrounding Mr. Cody's disputed consent. As we accept these findings, we hold that Codys do not allege a Fourth Amendment violation. A search conducted without probable cause and without a warrant does not violate the Fourth Amendment if the search is conducted pursuant to voluntary consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *United States v. Guglielmo,* 834 F.2d 866, 868 (10th Cir.1987).

## II. Sentencing Considerations

The Codys also challenge (1) the accuracy and method of the OBN agents' count of 1,028 marijuana plants, which was used to fix their sentences, and (2) the constitutionality of United States Sentencing Guideline (U.S.S.G.) § 2D1.1 under the Due Process Clause. These contentions have no merit.

■ The district court found that the Codys had 1,028 marijuana plants and sentenced them to 10 years imprisonment, the mandatory minimum under 21 U.S.C. § 841(b)(1)(A) for offenses involving 1,000 or more marijuana plants, regardless of weight. Under the Sentencing Guidelines, the court must find the quantity of drugs by a preponderance of the evidence, and we will reverse such a finding only if it is without factual support in the record, or if after reviewing all the evidence we are left with a definite and firm conviction that a mistake has been made. *United States v. Beaulieu,* 893 F.2d 1177, 1182 (10th Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). The Codys contend that OBN agents did not use a "sufficient process" to ensure an accurate count. Specifically, they complain that no written record of the count was introduced into evidence and that "one of the officers ... kept a running total in his head...." Briefs of Mr. and Mrs. Cody, at 8.

■ A sentencing court may consider any reliable source of information that has some minimum indicia of reliability. *United States v. Shewmaker,* 936 F.2d 1124, 1129 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992). The Codys cite no authority that requires the government to introduce a written record of its marijuana-plant count. To the contrary, courts have permitted even hearsay testimony, inadmissible for trial purposes, to support a finding of drug quantity at sentencing, provided that the testimony has sufficient indicia of reliability. *See, e.g., United States v. Kinder,* 946 F.2d 362, 366 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992). There is sufficient, reliable evidence in the record supporting the drug quantity finding. The agent responsible for the count and who personally attended the plant gathering and counting, Perry Harkrider, testified that 991 growing plants and 37 drying plants were found, for a total of 1,028. R.Vol. VI, at 266–67 & 303–04. Photographs and a video tape of the marijuana patch were also admitted into evidence. *Id.* at 190, 268–73. We decline to disturb the quantity determination.

■ The Codys also contend that the equivalency scheme for sentencing marijuana growers set forth in 21 U.S.C. § 841(b)(1)(A–D) and United States Sentencing Guideline § 2D1.1 denied them due process because it is "arbitrary and capricious" and has "no basis and logic." The scheme provides:

> In the case of an offense involving marihuana plants, if the offense involved (a) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (b) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

U.S.S.G. § 2D1.1.

We have previously rejected a constitutional challenge to the provisions challenged by the Codys. *United States v. Lee,* 957 F.2d 778, 784 (10th Cir.) (rejecting equal protec-

tion challenge, finding a rational basis for the scheme), *cert. denied,* —— U.S. ——, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992); *see also United States v. Osburn,* 955 F.2d 1500, 1506–10 (11th Cir.) (rejecting due process challenge to the equivalency scheme because it has a reasonable basis), *cert. denied,* —— U.S. ——, 113 S.Ct. 223, 121 L.Ed.2d 160 (1992). As the Eleventh Circuit explained:

> Congress was attempting to measure the severity of the offense, not the actual weight of marijuana grown. That explains why the equivalency changes from 100 grams to 1000 grams at the 50 plant mark. This sentencing elevation is obviously not a recognition that individual plants grown in groups of 50 or more have any greater weight than individual plants grown in groups of less than 50. Instead, it is a reflection of Congress's belief that growing a large number of plants (capable of large scale distribution) is an exponentially more severe offense than growing a small number.

*Osburn,* 955 F.2d at 1508. We reject the Codys' due process contention as it is controlled by the rationale, if not the express holding, of *Lee. United States v. Lee,* 957 F.2d at 781–84.

### III. Multiplicious Count

■ The government suggests a remand of the case to strike one count from the Codys' convictions. As the government correctly explains, Mr. and Mrs. Cody were convicted on separate counts (Counts Four and Five) of violating 21 U.S.C. § 856(a)(1) and (a)(2). Less than one month after this judgment was entered against the Codys, we decided that a person maintaining a single location for the manufacture of drugs could be convicted under either (a)(1) or (a)(2), but not both. *United States v. Morehead,* 959 F.2d 1489, 1508 (10th Cir.1992).[4] The dis-

trict court's instructions to the jury make evident that Counts Four and Five pertained to the same location, the Codys' residence and open fields. R.Vol. VI, at 514–516. Thus, the two counts are multiplicious, and we remand with instructions to vacate Count Five of the Codys' convictions for violations of § 856(a)(2). *See Morehead,* 959 F.2d at 1507–08.

AFFIRMED, but REMANDED WITH INSTRUCTIONS.

---

4. Subsection (a)(1) prohibits "knowingly open[ing] or maintain[ing] any place for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1).

Subsection (a)(2) prohibits "manag[ing] or control[ling] any building, room or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room or enclosure

for the purpose of unlawfully manufacturing, storing, distributing or using a controlled substance." 21 U.S.C. § 856(a)(2).

In *Morehead,* we found "no fundamental difference between managing or controlling ... and maintaining" and concluded that under the *Blockburger* rule "subsections (a)(1) and (a)(2) are the same offense." *Morehead,* 959 F.2d at 1507.