956 F.2d 1169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo SCARANO, Defendant-Appellant.
 No. 90-10332.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 15, 1992.
Decided March 11, 1992.
As Amended on Denial of Rehearing and Rehearing En Banc
June 1, 1992.
 
 Before CHOY, SCHROEDER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ricardo Scarano appeals his sentence of sixty months imprisonment, his fine of $75,000, and the imposition of restitution for counts that were dismissed pursuant to his plea agreement with the government. We affirm the district court's sentence.
 
 I. PROCEDURAL & FACTUAL BACKGROUND
 
 3
 On March 31, 1989, Scarano was indicted along with several codefendants for participating in four separate mail fraud schemes in violation of 18 U.S.C. § 1341, for filing false personal income tax returns for three years in violation of 26 U.S.C. § 7206(1), and for structuring currency transactions to avoid reporting requirements in violation of 31 U.S.C. § 5313(a).[1]
 
 
 4
 Scarano and his codefendants conducted mail fraud by submitting fraudulent insurance claims for stolen or damaged automobiles, bodily injuries suffered in staged accidents, and home burglaries and fires. Scarano was also charged with unlawfully structuring currency transactions in order to avoid federal reporting requirements. After Scarano was released on bond, he was also charged with tampering with a witness in violation of 18 U.S.C. § 1512(c).
 
 
 5
 In January 1990, Scarano entered guilty pleas to three counts of the indictment: one count of mail fraud (count 9); one count of making and subscribing to a false tax return (count 26); and one count of unlawful structuring of currency transactions (count 31). The government agreed to move to dismiss the remaining counts and to recommend a sentence of no greater than ten years imprisonment. Scarano and the government also agreed that the district court would have the discretion to order restitution for all of the counts with which Scarano was charged, not only the counts that he was pleading guilty to, as well as the payment of outstanding taxes, penalties and interest relating to all of the tax counts.
 
 
 6
 In May 1990, while Scarano was on bond pending sentencing, the government filed another criminal complaint against him charging theft of government monies and contempt of court for violation of conditions of release. The complaint charged that Scarano illegally received $38,906 from the Department of Health and Human Services (HHS) by filing false and fraudulent claims. The district court conducted a hearing and revoked Scarano's order of release. Scarano later was convicted for mail fraud on these charges. United States v. Ricardo Scarano, N.D.Cal. No. CR-90-0255-JPV.
 
 
 7
 The district court held the sentencing hearing on June 20, 1990. In the Presentence Report (PSR), the probation officer recommended that: (1) the base level offense be thirteen; (2) the base level be increased by five levels because Scarano knew the funds involved in the currency transactions were criminally derived; (3) the base level be increased by two levels for obstruction of justice; (4) there should be no downward departure for acceptance of responsibility; and (5) Scarano's Criminal History Category was III, but should be upgraded because this category did not adequately reflect the seriousness of his criminal activity.
 
 
 8
 The district court apparently adopted the recommendations of the PSR. On count 31, the district court sentenced Scarano to sixty-months imprisonment and three years of supervised release. It also ordered Scarano to pay restitution for all counts of the indictment as a condition of supervised release, as well as taxes, penalties, interest, and a fine of $75,000. Scarano did not object to any part of the count 31 sentence at the hearing.
 
 
 9
 On count 9, the court imposed a five-year prison term to run consecutively with the sentence imposed on count 31. On count 26, it suspended imposition of sentence and placed Scarano on probation for five years to commence upon his release from custody.
 
 II. DISCUSSION
 
 10
 A. Enhancement of Base Offense Level: Proceeds of Criminal Activity.
 
 
 11
 The district court added five points to the base offense level because Scarano "knew or believed" that the funds involved in the currency transactions were "criminally derived." United States Sentencing Guidelines (U.S.S.G.) § 2S1.3(b)(1).
 
 
 12
 The complaint states that the currency structuring charges involved in count 31 occurred between October 14 and October 19, 1988. The PSR states that Scarano received more than $200,000 as a result of the mail fraud schemes he engaged in between 1979 and 1986. Scarano also controlled funds from other criminal activity. He received Social Security disability payments from August 3, 1986 to May 3, 1990 on the basis of false claims he filed. Scarano also received $102,163.72 in disability payments from his life insurance company arising out of the same false claims. He was later charged and convicted of insurance fraud. United States v. Ricardo Scarano, N.D.Cal. No. CR-90-0255-JPV. Scarano refused to sign a form acknowledging that his personal financial statement was true and correct, making the probation officer suspicious about Scarano's actual assets.
 
 
 13
 Scarano has not offered a credible explanation for the source of the funds used in the illegally structured transactions to rebut the district court's conclusion. See United States v. Sanders, 942 F.2d 894 (5th Cir.1991). Indeed, the fact that Scarano attempted to structure the transactions in such a fashion suggests that he was attempting to hide the money. See United States v. Hoyland, 914 F.2d 1125, 1128 (9th Cir.1990) (pattern of cash deposits and exchanges made only to avoid detection gives rise to inference that criminal conduct is involved).[2]
 
 
 14
 B. Adjustment for "Obstruction of Justice."
 
 
 15
 The district court increased the offense level by two points under section 3C1.1 for "obstruction of justice."[3] Scarano argues that he could not have "obstructed justice" within the meaning of section 3C1.1 unless his actions related to the offenses involved in his plea agreement. The PSR refers to an altercation between Scarano and Fremont Police Officer Tom Sana to prove such a nexus existed. Scarano was charged with tampering with a witness for his alleged altercation with Detective Sana. The magistrate who signed the criminal complaint determined that probable cause existed to have Scarano charged, and the PSR relied on the evidence submitted to the magistrate in recommending the upward adjustment. The affidavit in support of the criminal complaint asserts that Detective Sana was a potential witness in the charges involved in this appeal.[4] Thus, the tampering charge was sufficiently related to the offenses involved in this appeal that the district court relied on it to find that Scarano obstructed justice within the meaning of the Guidelines.
 
 
 16
 C. Denial of Downward Adjustment for Acceptance of Responsibility.
 
 
 17
 The district court refused to adopt a downward adjustment for acceptance of responsibility because Scarano pleaded guilty to some charges. See U.S.S.G. § 3E1.1(a). A guilty plea, however, does not guarantee the defendant a downward adjustment. See § 3E1.1(c).
 
 
 18
 In this case, the district court's denial of Scarano's request was not clear error. First, as the PSR stated, Scarano continued to engage in unlawful conduct while on pretrial release. Scarano was indicted and convicted of criminal fraud for filing false claims with HHS. Although the disability claim relates to insurance fraud activity involved in the original indictment, Scarano continued to receive payments after the plea agreement in January 1990 and until May 1990. Such activity proves that the defendant has not accepted responsibility for his criminal conduct. See United States v. Cooper, 912 F.2d 344, 345 (9th Cir.1990); United States v. Piper, 918 F.2d 839, 840 (9th Cir.1990); see also United States v. Reed, 1991 U.S.App LEXIS 28509, (6th Cir. Dec. 4, 1991) (defendant who committed further credit card fraud while in jail not entitled to downward adjustment).
 
 
 19
 Second, as discussed above, Scarano obstructed justice by tampering with a potential witness. The notes to section 3E1.1 state,
 
 
 20
 Conduct resulting in an enhancement under § 3C1.1 (Willfully Obstructing or Impeding Proceedings) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.
 
 
 21
 U.S.S.G. § 3E1.1, comment. (n. 4). Because the evidence supports the PSR's conclusion that Scarano obstructed justice by tampering with a witness, the district court did not clearly err in concluding that Scarano was not entitled to a downward adjustment.
 
 
 22
 Scarano claims that the lack of explicit factual findings by the district court in refusing to grant the downward adjustment requires remand. See, e.g., United States v. Carlisle, 907 F.2d 94, 96 (9th Cir.1990) (per curiam). The district court, however, discharges its obligation to make factual findings by adopting the conclusions of the PSR. United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990); United States v. Corley, 909 F.2d 359, 362 (9th Cir.1990). The district court not only adopted the PSR's conclusions, but Judge Vukasin began the sentencing hearing by stating that he had read the PSR and Scarano's objections to its recommendations. Scarano's attorney also made an oral presentation at the hearing, and the court considered and rejected Scarano's arguments. More explicit factual findings were unnecessary in this instance.[5]
 
 
 23
 III. Miscalculation of Criminal History Category.
 
 
 24
 The district court adopted the PSR's recommendation of a Criminal History Category of III and a sentence range of forty-six to fifty-seven months. Category III applies to defendants with four, five or six criminal history points. U.S.S.G., Sentencing Table, Ch. 5, Pt. A. Scarano argues the PSR erred in assigning a point for a February 1983 traffic offense because section 4A1.2(c)(1) excludes misdemeanors where "the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days...."[6] The government disputes this claim; it states that Scarano was convicted of reckless driving and was sentenced to twenty-four months probation,[7] ninety days in jail (which was suspended), and $1,335 in fines and costs.
 
 
 25
 We agree that Scarano properly received a point for this offense. Reckless driving is not one of the misdemeanors or petty offenses excluded from section 4A1.1(c) by virtue of section 4A1.2(c)(2). Although Scarano argues that the charge was reckless driving that resulted in a conviction for an unspecified "lesser charge," he cannot prove that the offense falls within the exceptions in sections 4A1.2(c)(1) and (c)(2). A lesser charge of reckless driving is neither similar to any offenses enumerated in section 4A1.2(c)(1), nor is it one that is never counted under that section. Scarano asserts that a "lesser charge" of reckless driving is a "minor traffic infraction," but the law in this Circuit is otherwise. See United States v. Aichele, 912 F.2d 1170, 1171 (9th Cir.1990) ("infraction is any offense for which the maximum authorized term of imprisonment of imprisonment is not more than 5 days"). Because Scarano received a ninety-day suspended sentence, the "lesser charge" could not have been a "minor traffic infraction." A Criminal History Category of III was therefore appropriate. See U.S.S.G. § 4A1.1, Sentencing Table, Ch. 5, Pt. A.
 
 
 26
 IV. Upward Departure for Understated Prior Criminal History.
 
 
 27
 The district court found that Scarano's Criminal History Category III did not adequately reflect his prior criminal conduct or the likelihood that he will commit other crimes. See U.S.S.G. § 4A1.3 (Policy Statement).
 
 
 28
 When the district court decides to depart, it is required to specify the particular facts that illustrate why the defendant is unlike other defendants in the same category. United States v. Singleton, 917 F.2d 411, 412 (9th Cir.1990). Where the PSR makes specific findings that establish an appropriate factual record as a basis for departure, the district court need not make any further findings. Id. at 412-13. The PSR set forth facts demonstrating that Scarano's criminal history is far more serious than those of most defendants who are classified as Category III and that a great likelihood exists that Scarano will continue to commit further crimes. See PSR p 9 at 2 (criminal indictment for tampering with a witness while released on bond); id. p 10 at 3 (indictment--and later conviction--for theft of government monies); id. p 11 at 3 (bail revoked due to continued criminal conduct); id. p 37 at 8 (participation in several insurance fraud schemes not charged in 32-count indictment); id. p 55 at 10-11 (pleaded guilty to two pre-Guidelines counts not reflected in criminal history). These facts are sufficient to support the district court's departure. See Singleton, 917 F.2d at 413.
 
 
 29
 The district court departed upward a total of three months by sentencing Scarano to sixty months imprisonment. See U.S.S.G. Ch. 5, Pt. A, at 280. Under these circumstances, the departure was not "unreasonable" under 18 U.S.C. § 3742(e)(3). See United States v. Lira-Barraza, 941 F.2d 745, 747 (9th Cir.1991) (en banc) (sentence six times maximum under Guideline range is not per se unreasonable).
 
 
 30
 V. Power to Impose Restitution on Certain Counts.
 
 
 31
 Scarano challenges the district court's imposition of restitution for counts that were dismissed pursuant to the plea agreement. Scarano does not admit that he agreed to pay restitution on all charges, but the record supports the government's claim that Scarano agreed to give the district court the discretion to impose restitution on all the counts in the indictment.[8]
 
 
 32
 The initial question is whether the restitution order was entered pursuant to the Federal Probation Act, 18 U.S.C. § 3651 (FPA)[9] or the Victim and Witness Protection Act, 18 U.S.C. §§ 3663, 3664 (formerly §§ 3579, 3580) (VWPA).[10] Where the district court's order could have been entered under either the FPA or the VWPA, this court reviews the legality of the restitution order under both statutes. United States v. Barany, 884 F.2d 1255 (9th Cir.1989), cert. denied, 493 U.S. 1034 (1990).
 
 
 33
 Because the criminal conduct involved in counts 9 and 26 occurred (May 21, 1985 and April 15, 1986 respectively) during the time frame when both the FPA and the VWPA were in force, both acts apply. The district court imposed probation as a part of the sentence on counts 9 and 26. We find that the FPA authorized the district court to impose restitution on all counts in the indictment. In United States v. Duvall, 926 F.2d 875 (9th Cir.1991) we held that the Supreme Court's decision in Hughey v. United States, 110 S.Ct. 1979 (1990) did not apply to restitution orders entered under the FPA.[11] Scarano has not persuaded us that Duvall is distinguishable from the facts of this case.
 
 
 34
 In Duvall, we interpreted the language of the FPA to allow imposition of restitution for other crimes where the offense for which conviction was had was part of a scheme or conspiracy. Duvall, 926 F.2d at 877. Because the offense for which Scarano was convicted was part of larger scheme to defraud insurance companies, the district court had the authority to impose restitution for the other counts in the indictment.
 
 
 35
 The district court's sentence is AFFIRMED in all respects.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Of these offenses, only the offenses under Title 31 were alleged to have occurred after November 1, 1987, the effective date of the federal Sentencing Guidelines
 
 
 [2]
 Scarano argued that the money involved in the transactions was the proceeds from property that he sold in September 1988. Scarano does not submit enough proof, however, to suggest that the district court's decision was clear error. Scarano could not prove that the funds from the property sale were the same funds involved in the illegal transactions. Moreover, if the funds were derived from the property, Scarano had no need to avoid the federal reporting requirements
 
 
 [3]
 Section 3C1.1 states, "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct, the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." The application notes to section 3C1.1 stated that "threatening, intimidating, or otherwise unlawfully attempting to influence a ... witness ... directly or indirectly may provide a basis for applying the adjustment." U.S.S.G. § 3C1.1, comment. (n. 1(d)). This guideline was substantially rewritten, effective November 1, 1990. See United States Sentencing Commission, Guidelines Manual, App.C. at 163-64 (Nov. 1991)
 
 
 [4]
 Scarano objects to this portion of the affidavit because it appears to have been added as an afterthought. The affidavit in support of the complaint, however, proves that Detective Sana was a potential witness against Scarano in the charges involved in this appeal. The affiant was Joseph Del'Marmol III, an officer involved in the CHP investigation that led to the 32-count indictment. Del'Marmol stated that he and Detective Sana went to Scarano's residence to arrest him for vandalism of property. Importantly, the affidavit states that Sana was present at other interviews related to the CHP investigation of the mail fraud schemes. Sana was therefore a potential witness as to both the vandalism charge and charges involved in the instant appeal, as the affidavit states
 
 
 [5]
 Scarano asserts that the failure to make explicit factual findings also violates Fed.R.Crim.R. 32(c)(3)(D). However, when the district court gives the defendant the opportunity to present objections to the PSR--both written and oral--Rule 32's requirements are satisfied. United States v. Floyes-Payon, 942 F.2d 556, 561 (9th Cir.1991); Rosales, 917 F.2d at 1222. The district court gave Scarano those opportunities before it announced its sentence
 
 
 [6]
 Scarano concedes that three points are correct: one point for 1981 burglary sentence; one point for bribing a public officer in December 1983; and one point for June 1987 sentence for resisting an officer
 
 
 [7]
 Scarano retorts that the PSR is not clear: at one point it says Scarano was sentenced to four months and at another point 24 months. Compare PSR p 61 at 12 with id. p 75 at 14. The government states that this is a typographical error; the true sentence was 24 months probation. If this is correct, the conviction is counted under section 4A1.2(c)(1) because the sentence was for more than one year. Even if the government's reading of the record is incorrect, the outcome remains the same because the conviction does not fall within any exclusion under section 4A1.2(c). Moreover, even assuming that the correct category was II, the district court's departure to the statutory maximum of 60 months was well within its discretion. If Scarano's criminal history category was II, the upward departure would have been nine months rather than three months under category III, but such a departure is not unreasonable
 
 
 [8]
 We reject the government's assertion that Scarano's failure to object to the restitution order at the sentencing hearing waives his right to raise the issue here. See United States v. Carlson, 900 F.2d 1346, 1349-50 (9th Cir.1990) (court will consider issue on appeal if purely a question of law and opposing party suffers no prejudice); see also Fed.R.Crim.P. 52(b) (plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court)
 
 
 [9]
 18 U.S.C. § 3651 provided in relevant part: "While on probation and among the conditions thereof, the defendant ... [m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had...."
 The FPA was repealed effective November 1, 1987. See Pub.L. No. 98-473, 98 Stat. 1987, 2031.
 
 
 [10]
 The VWPA provides in relevant part: "The court, when sentencing defendant convicted of an offense ... may order ... that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a). The VWPA became effective January 1, 1983. Thus both acts were in force between January 1, 1983 and November 1, 1987
 
 
 [11]
 The Supreme Court held in Hughey that the language of the VWPA "make[s] plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." Id. at 1981. Hughey, therefore, was not required to make restitution on counts dismissed pursuant to the plea agreement but only on the count of conviction